Janko N. JANKOVIC, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

Civ. A. No. 74-426.

United States District Court, District of Columbia.

Nov. 22, 1974.

Hershel Shanks, Allan I. Mendelsohn, James Bruce Davis, Washington, D.C., for plaintiff.

Peter R. Reilly, Asst. U. S. Atty., Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

This matter is before the Court on cross-motions for summary judgment. Fed.R.Civ.P. 56. The parties have agreed that there are no material facts as to which there is a genuine dispute, that only legal issues remain, and that summary judgment accordingly is the appropriate vehicle for disposition of the case. *See, e. g.,* Leonard v. BHJK Corp., 152 U.S.App.D.C. 97, 99, 469 F.2d 108, 110 (1972).

Plaintiff is a 72 year old naturalized American citizen of Yugoslavian descent. In his amended complaint he seeks to compel the United States Civil Service Commission (CSC) to credit him with retirement benefits, in accordance with 5 U.S.C. § 8332(b) (1970), for the period from October 2, 1950, through June 30, 1960. During that time plaintiff rendered services to the United States as a foreign language (Serbo-Croatian) instructor at the Department of State Foreign Service Institute (FSI).

The defendants are the United States, the Secretary of State and each CSC Commissioner.

This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1361 and 1651.

The issue is whether plaintiff, during the period in question, was an employee of the United States, and thus entitled to retirement benefits or whether he was a self-employed independent contractor, and so not entitled to retirement benefits. The CSC ruled adversely to plaintiff and this timely application for review of that adverse decision followed.

For the reasons set out hereinafter, the Court grants summary judgment for the plaintiff.

### I

The facts are undisputed.[1]

On October 2, 1950, plaintiff entered into a standard form contract with the Department of State to render services as a native speaker in the Serbo-Croatian language, "when and as directed by the Director of the Foreign Service Institute." The contract expired June 30, 1951. Thereafter, contracts of an identical nature were entered into annually between plaintiff and the Department of State. Beginning on July 1, 1954, however, the contract which plaintiff was required to sign as a condition of his continuing employment was amended to contain a clause stating that the plaintiff was "not an employee of the Department of State." Standard form contracts containing such language were thereafter signed annually by plaintiff,

1. The Court's factual statements are drawn from the parties' Statements of Material Facts filed pursuant to Local Rule 1–9(g), and the CSC administrative record, hereinafter referred to as (R.—).

the final such contract expiring on June 30, 1960.

On July 1, 1960, plaintiff received a regular temporary appointment as a Training Instructor with FSI and was thereafter reappointed annually in that capacity through 1965. Then, on January 2, 1966, he received a career appointment to a limited assignment as a Foreign Service Reserve Officer, in which capacity he remains today.

Meanwhile, on September 26, 1966, in a letter to the CSC's Bureau of Retirement, Insurance and Occupational Health (BRIOH), plaintiff raised the question of creditability of retirement benefits for the period October, 1950, to June, 1960, during which he was under contract, *supra*. BRIOH advised plaintiff on December 27, 1966, that during that period he did not meet the statutory definition of a Federal employee as set forth in 5 U.S.C. §§ 8331(1) and 2105(a). Specifically, BRIOH denied the requested benefits on the grounds that plaintiff was "self-employed and not under the supervision and direction of a Federal officer for the term of the contracts." (R. 60.)

In a decision issued October 14, 1970, CSC's Board of Appeals and Review (BAR) affirmed the decision of BRIOH. (R. 64–69.) BAR held that the annual contracts for the 1950–1960 period were for nonpersonal services and did not create an employment relationship creditable for retirement benefits. Thereafter,

on two occasions, the CSC Commissioners rejected petitions to reopen or to reconsider the BAR ruling, the last such rejection occurring on March 23, 1973. The plaintiff then filed in the Court of Claims which dismissed the petition on jurisdictional grounds.[2] He then filed his complaint in this Court on March 13, 1974.

## II

The defendants challenge this Court's jurisdiction on various grounds.

■■ First, it is asserted that the doctrine of sovereign immunity bars this action under 28 U.S.C. § 1331(a).[3] *See, e. g.*, United States v. Sherwood, 312 U. S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1682 (1949); Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L. Ed.2d 15 (1963). However, it is clear that, in this circuit, § 10 of the Administrative Procedure Act, 5 U.S.C. § 702,[4] even though not pleaded provides "an independent source of jurisdiction that empowers district courts to review much agency action regardless of the amount in controversy."[5] Pickus v. United States Board of Parole, 507 F.2d 1107, at 1109 (D.C.Cir. 1974), (citations omitted). *See also* Associated Electric Cooperative, Inc. v. Morton, 507 F.2d 1167, at 1176 (D.C.Cir. 1974). Accordingly, the defense of sovereign immunity has been waived.

---

2. In that Court's view, it lacked jurisdiction since plaintiff was "not asking for money presently due him from the United States." Jankovic v. United States, No. 316–73 (Ct. Cl. Mar. 1, 1974) (defendants' Exhibit A). Thus, plaintiff's claim for retirement benefits has not been reviewed on the merits by any court of competent jurisdiction.

3. The defendants also sought dismissal of the action for failure to name indispensable parties. Plaintiff's amended complaint, filed after the defendants' motion, cured that defect by naming each CSC Commissioner as a party defendant. Moreover, plaintiff appears to have conceded defendants' assertion that this action may not be sustained under 28 U.S.C. § 1346(a)(2). Similarly, plaintiff

also appears to have dropped any claim for relief under 28 U.S.C. § 1346(b).

The Court agrees with the defendants that the Secretary of State is improperly named as a party defendant inasmuch as he has no direct authority over the administration of the Federal employee retirement laws. *See* 5 U.S.C. § 8347(a).

4. § 10 of the APA provides:
   A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. 5 U.S.C. § 702.

5. The parties agree that the amount in controversy is approximately $29,000.

Next defendants challenge this Court's jurisdiction to provide any relief under 28 U.S.C. § 1361 on the ground, correctly, that mandamus does not lie to compel a discretionary act, but only where there is a ministerial duty to be performed. Defendants' position is that creditability of retirement benefits is discretionary because plaintiff's contract service was not considered, by the defendants CSC Commissioners, to be Federal employment under 5 U.S.C. § 2105(a). Such a contention, of course, assumes the ultimate issue in this case, *i. e.*, whether plaintiff was in fact an employee of the United States during the period in question. Further, the determination of whether a person performing services is an employee in a given case is not committed to agency discretion, but is, in fact, subject to judicial review. *See* Dismuke v. United States, 297 U.S. 167, 173, 56 S.Ct. 400, 80 L.Ed. 561 (1936). *See also* Adelstein v. Macy, 265 F.Supp. 171, 172 n.1 (E.D.N.Y.1967).

Finally, where the Court otherwise has an independent basis of jurisdiction, the Court may award declaratory relief under 28 U.S.C. §§ 2201, 2202, and it may issue any writ necessary in aid of its jurisdiction under 28 U.S.C. § 1651, the All Writs Act.

### III

Having cleared the jurisdictional hurdles, we turn to the merits.

At the outset, we recognize that in Federal employee adverse action litigation the District Court exercises limited judicial review and only to determine whether the challenged agency action is arbitrary, capricious, or otherwise not supported by substantial evidence. 5 U.S.C. § 706(2). Moreover, that "determination is based upon the agency record submitted to it." Polcover v. Secretary of Treasury, 155 U.S.App.D.C. 338, 341, 477 F.2d 1223, 1226 (1973).[6]

The administrative record in this case indicates that BRIOH denied plaintiff his requested retirement benefits in reliance, primarily, on the advice of the Supervisor, Retirement and Tax Accounting of the State Department That advice was to the effect that the annual contracts between plaintiff and the Department for the period in question did not create an employment relationship, but rather that the plaintiff "was considered to be self-employed and he was not under the supervision and direction of a Federal officer." (R. 176, 178.)

A scant two weeks after receipt of the Supervisor's report, BRIOH informed plaintiff that the contract language and the report operated to defeat his claim.[7]

The pertinent provisions of the contracts are as follows:

### ARTICLE V

It shall be recognized at all times that the Contractor is not an employee of the Department, that he shall not assume the prerogatives of an employee and that he owes no duty to the Government by virtue of this agreement other than specific performance under this contract.

### ARTICLE VI

In the performance of this contract, the Contractor will not be under the direct administrative supervision of any officer or employee of the Department; however, this does not preclude

---

6. The discussion in *Polcover, supra,* of this Court's scope of review indicates various tests, including the "substantial evidence" rule, the "rational basis" test, and the "arbitrary or capricious" standard. Whatever the description employed by the reviewing court, the end result is the same, *i. e.,* limited judicial review based upon the agency record. There is no trial *de novo.*

There is no claim by this plaintiff of any procedural errors at any stage of the agency process, and the defendants agree that plaintiff has exhausted "his available administrative remedies."

7. The record is devoid of any indication that BRIOH attempted to verify the Supervisor's report with any person of superior position in the State Department.

the right of the Department to provide detailed instructions of the work to be performed and to make appropriate inspections of services rendered. (R. 50.)

In light of the foregoing language BAR, on October 14, 1970, held that plaintiff was not an "employee" as defined in 5 U.S.C. § 2105(a), § 8331(1) since his status did not match the following criteria for an "employee:"

1. The person must be engaged in the performance of Federal functions under authority of an Act of Congress or Executive Order; and

2. He must be appointed or employed by a Federal Officer in his official capacity as such; and

3. He must be under the supervision and direction of a Federal Officer. (R. 60.)

If the case were to rest there, there would seem to be little doubt that its disposition would be governed by the test laid down in *Polcover, supra,* that "[t]he test is not how we would decide the issue based on the evidence in the record, but whether substantial evidence in the record supports the decision . . . ." 155 U.S.App.D.C. at 346, 477 F.2d at 1231 (citations omitted).

### IV

The record indicates, however, that BAR ignored or failed to give significance to the evidence in the record which, in the opinion of this Court, if properly evaluated, might well have compelled contrary conclusions. That omission leads this Court to believe that when *all* the evidence is considered the "substantial evidence" which might meet the *Polcover* test reduces to a condition of insubstantiality and that the adverse decision rests on form rather than substance. This conclusion is buttressed by a consideration of two important documents in the administrative record, *viz.*, (1) a letter from the office of the Legal Adviser of the State Department to BAR dated June 27, 1968, and (2) a re-

port by the Comptroller General to the Congress of the United States dated June 30, 1960.

### 1. *The State Department Letter and Recommendation*

At the time BAR reached its decision affirming BRIOH, it had in its possession a lengthy letter from the State Department indicating that the Department had completely reversed the report of the supervisor dated December 12, 1966, *supra,* and given its support unequivocally to the plaintiff. That change in position was communicated to BAR by a letter from the office of the legal adviser dated June 27, 1968.

Pertinent excerpts follow:

> . . . (T)he contractual relationship between the appellant and Foreign Service Institute during the period 1950 to 1959 would not be correctly characterized as one of self-employment and not under the supervision and direction of a federal officer during the term of the contracts. It concluded to the contrary that the services performed by the appellant would legally be characterized as personal services performed on a regular basis without interruption notwithstanding the form of contract employed not statements contained in those contracts to the contrary, *and that the appellant was at all times during that period, and subsequently while performing the same services for the Foreign Service Institute under appointment from 1960 to the present, under direct supervision and direction of federal officers of the Foreign Service Institute.* (R. 48–49) (emphasis added).

At another point the letter stated:

> That the Institute has used improperly nonpersonal service contracts is also evident from pertinent decisions of the Comptroller General where a distinction has been drawn between purely personal services to be performed by Federal personnel

under Government supervision and services of a nonpersonal nature which are obtainable by contract. The criteria to be considered for a proper determination of the services to be rendered are the degree of Government supervision; the furnishing of equipment, supplies, and office space; the use of special knowledge or equipment; the temporary character of the services; and whether the remuneration is based upon results to be accomplished or upon the time actually worked. See 26 Comp.Gen. 468 and 32 *id.* 127. *Applying these criteria, we are of the opinion that the Institute has secured services of a personal nature and therefore should not have used nonpersonal service contracts.* (R. 55) (emphasis added).

Still further the letter pointed out:

. . . Regularization of status of the appellant on limited excepted service in 1960 significantly did not entail any modification or alteration of the manner or terms of performance of work or supervision. The Office of Personnel of the Foreign Service Institute has informed this office that during 1950 to the present the services performed by the appellant would be and were considered by that office to be equivalent of regular employee status in all material respects. Language instructors employed on a regular basis were not treated in a manner distinguished from appointive employees vis-a-vis personnel administration, and were not in any respect treated as independent contractors. The appellant, for example, in 1964 was awarded a Certificate for 10 years' service based precisely on the determination that his service was comparable to that of a regularly appointed employee. The Office of Personnel of the Foreign Service Institute moreover has determined upon investigation that the conditions of such service prior to appointive status in 1960 at all times would have been considered as personal services contract performance. At all times during that period the appellant as a language instructor was under direct supervision of supervisory federal officers and performed all work on the premises of the Government and at all times utilizing Government materials. (R. 52).

The BAR decision largely ignored those parts of the State Department submission concerning plaintiff's employment. For example, the record indicates that Jankovic's employment during the whole period in question was regular and continuous, averaging between 30 and 35 hours per week from 1951 to 1954, and approximately 40 hours per week thereafter. (R. 51.) While plaintiff's teaching activities consisted primarily of repetitious drilling of his students in order to achieve "native fluency," his duties were nonetheless closely monitored by his supervisors, and, moreover, he was without authority to depart from the prescribed curriculum. (R. 98.)

Obviously, the BAR chose not to be guided by the findings and opinions of the employing agency, but chose to rely on form, *i. e.,* (the literal language of the contract), rather than substance, *i. e.,* (the performance of the contract).

2. *The Report of the Comptroller General*

So, too, the BAR decision disregarded or attached no significance to the June, 1960 report of the Comptroller General to the Congress, covering an examination of FSI for the period 1957–1959. The essence of that report was that FSI had illegally contracted for regular tutors, such as plaintiff, by the use of so-called "nonpersonal service" contracts. The report concluded that the services performed under such "nonpersonal" contracts were in fact personal in nature. It recommended that such "nonpersonal service" contracts by FSI be discontinued, and that the services of the personnel in question be performed by regularly appointed FSI employees.

Report to the Congress of the United States, Examination of Foreign Service Institute, Department of State, Fiscal Years 1957–1959 (June 1960), Comptroller General of the United States, letter B–133310, June 30, 1960. The report further stated in pertinent part:

> In addition to its regular staff, which is appointed or assigned from the Foreign Service or departmental positions, as provided in section 704(a) of the Foreign Service Act, the Institute has secured by contract the services of tutors and foreign language technicians and certain other types of specialized services. *The hiring of these individuals for what we .believe are strictly personal services by means of nonpersonal service contracts is unauthorized and in circumvention of regular employment procedures.* (R. 53) (emphasis added).

As a result of the 1960 Comptroller General report, foreign language instructors (such as and including plaintiff) were placed on "limited Expected Service appointments the following fiscal year." (R. 56.)

A review of the relevant dates involved in this dispute brings plaintiff's claims, and the importance of the Comptroller General report, into much sharper focus. Plaintiff's "contract" service was from October 2, 1950 to June 30, 1960, the date of the report of the Comptroller General. From July 1, 1960, the beginning of the "next fiscal year" referred to by the State Department in its brief before BAR, *supra*, at R. 56, to the present time, plaintiff has served under regular appointments either in excepted service or in the Foreign Service Reserve.

Thus, on June 30, 1960, plaintiff was employed by the FSI under a so-called "nonpersonal service contract." However, the very next day, July 1, 1960, he became a regularly appointed employee, although, as the administrative record clearly indicates, FSI made no change whatsoever in the type of duties and responsibilities performed by the plaintiff, nor in the degree of supervision. (R. 48–57.) Viewed in this context, the Comptroller General report is or should have been a substantial factor to be considered by the CSC.

**V**

In the light of the foregoing, it is the Court's view that the CSC erred in its failure to give sufficient weight to the submission of the State Department particularly when read in the light of the Comptroller General report of June 30, 1960. The Court is led to the conclusion that when the whole record is considered there is not substantial evidence to support the narrow restricted holding of BAR.[8]

Thus, the Court holds that plaintiff, during the period of October 2, 1950 to June 30, 1960, was an "employee" of the Federal Government under the plain meaning of 5 U.S.C. § 8332(b). The administrative record does not support the CSC conclusion that the preponderance of the evidence sustains the denial of plaintiff's retirement benefits.[9]

---

8. *See, e .g.*, Moore v. Administrator, 155 U. S.App.D.C. 14, 475 F.2d 1283 (1973) ; Dabney v. Freeman, 123 U.S.App.D.C. 166, 358 F.2d 533 (1965), for the application of the "substantial evidence" test.

Despite the contrary assertions of the responsible officials of the State Department, the CSC insisted that the annual contracts covering the period October 2, 1950 through June 30, 1960, were "the best evidence that . . . Jankovic was not an employee of the Department of State and . . . this should foreclose consideration of secondary or later evidence to controvert the best evidence." (R. 66.) Although the CSC did concede that "in the light of the 1960 GAO report, it appears probable that an employ-

er-employee relationship evolved" (R. 67), it nevertheless maintained that "this latter circumstance did not change the conditions under which the appellant performed his services and, in the judgment of the (BAR), may not now serve to create entitlement to retirement credit for his service performed under nonpersonal contracts." (R. 68.) The CSC here erred in not ascribing greater, and thus controlling, weight to the report of the Comptroller General.

9. In light of its disposition of this case, the Court intimates no view as to plaintiff's alternative theory that under common law tests of employment he was an employee of the United States.

Accordingly, it is this 22nd day of November, 1974,

*Ordered* that defendant Henry A. Kissinger, Secretary of State, is hereby dismissed as a party defendant; and it is further

*Ordered* that defendants' motion for summary judgment be, and the same is hereby, denied; and it is further

*Ordered* that plaintiff's motion for summary judgment be, and the same is hereby, granted; and it is further

*Ordered and adjudged* that plaintiff, Janko N. Jankovic, was an employee of the United States for purposes of retirement benefits during the period October 2, 1950 through June 30, 1960, inclusive; and it is further

*Ordered and adjudged* that defendants Hampton, Spain and Andolsek, Commissioners, United States Civil Service Commission, shall compute plaintiff Jankovic's retirement benefits on the basis that he was an employee of the United States from October 2, 1950 through June 30, 1960, and, upon his retirement as such an employee, shall award said sum to him.