**James R. COSTNER**

v.

**The UNITED STATES.**

No. 167–79C.

United States Court of Claims.

Nov. 18, 1981.

___

Ronald J. Stites, Kansas City, Mo., attorney of record, for plaintiff; Koenigsdorf, Kusnetzky & Wyrsch, Kansas City, Mo., of counsel.

Frances L. Nunn, Washington, D. C., with whom was Acting Asst. Atty. Gen., Thomas S. Martin, Washington, D. C., for defendant.

Before DAVIS, NICHOLS and SMITH, Judges.

EDWARD S. SMITH, Judge, delivered the opinion of the court:

In this civilian pay case, before us on cross-motions for summary judgment, plaintiff, James R. Costner, claims entitlement to credit toward his civil service annuity for the period December 15, 1949, through June 23, 1963, during which time, he asserts, he was an employee of the Federal Government. Defendant answers that plaintiff was in fact Contract Technical Service Personnel, that is, an employee of RCA Service Company (RCA) which had contracted with defendant to provide technical personnel.

Plaintiff originally filed this claim with the Bureau of Retirement, Insurance, and Occupational Health (BRIOH) of the Civil Service Commission, which denied the claim on August 20, 1974. The commission's Appeals Review Board (board) affirmed BRIOH in an opinion dated May 15, 1975, on the ground that plaintiff was never "appointed" to a position with the Federal Government within the meaning of 5 U.S.C. § 2105.

Plaintiff then filed a class action in the United States District Court for the Western District of Missouri, on behalf of himself and others similarly situated.[1] While the suit was structured so as to avoid a direct claim for money damages against the United States,[2] the district judge found that the case was essentially one demanding money damages against the United States, and, the amount in controversy being more than $10,000, the district court had no jurisdiction under the Tucker Act.[3] Accordingly, he transferred the case to this court pursuant to 28 U.S.C. § 1406(c).[4]

The issue to be decided is whether, during the contested period, Costner was a federal employee within the meaning of 5 U.S.C. § 2105(a). We hold that he was not.

## I.

Because the parties have not been helpful in defining the jurisdictional basis of the suit in this court,[5] our first task is to decide exactly who is before the court and in what posture.

First, jurisdiction in this court is based on the Tucker Act, 28 U.S.C. § 1491, because the claim is against the United States for money damages and is founded on an act of Congress. The case was therefore properly transferred to this court.[6] An employee of the United States is entitled to an annuity based on the number of years of

1. *Costner v. Campbell*, No. 77–0492–CV–W–1 (W.D.Mo.1979).

2. The defendant was chairman of the commission and the relief demanded was injunctive and declaratory.

3. 28 U.S.C. § 1346(a)(2) (1976).

4. *Costner v. Campbell, supra* note 1, Memorandum and Order (Apr. 19, 1979).

5. The district court ordered the parties to "cooperate in designing procedures which will permit the Court of Claims to rule whether it has jurisdiction of this case." *Costner v. Campbell,* *supra* note 1, Memorandum and Order at 3. Plaintiff's petition, however, invokes 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 702 (judicial review of administrative action). Neither of these provides jurisdiction for this court: § 1331 is limited by its terms to the district courts, and § 702 does not provide an independent source of jurisdiction for any court. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

6. *Polos v. United States*, 556 F.2d 903 (8th Cir. 1977).

service for the Government.[7] If plaintiff was an employee within the meaning of the annuity statute, then he has a substantive right to money damages under these provisions of title 5, and the Tucker Act grants us jurisdiction to hear the case.[8] Under the Tucker Act, we may review the decision of the board for errors of law.[9]

Second, because the action was originally a class action and plaintiff has not appropriately changed his petition in coming to this court, it is also important to emphasize that Costner is the *only* plaintiff before this court. The district court denied the motion for class certification on the ground that plaintiff was an inadequate representative of the class,[10] and so the only case transferred to this court was plaintiff's own. Furthermore, in this court, no other class member has appeared to litigate his claims. Therefore, only Costner's claims are before this court and it is only Costner's claims which we decide.

Finally, there is some confusion as to what constitutes the record before the court on these cross-motions for summary judgment. The pertinent documents before us are the administrative record, the board decision, plaintiff's exhibits attached to its motion for summary judgment, and the Government's deposition of Costner. Taken together, they present no genuine issue as to any material fact.

Defendant argues, *alternatively* to its cross-motion for summary judgment, that there are issues of disputed fact. However, the examples of disputed facts given by the Government are either conclusory statements in plaintiff's brief, which would in any event have to be tested against the affidavits supplied, or are immaterial in our view of the case and so have not been considered. In any case, defendant's claim that there are genuine issues of disputed fact is the fallback position to its motion for

summary judgment. Taking defendant's motion as it stands—a motion for summary judgment—we may conclude that defendant accepts submission of this case on the basis of the documents referred to above. We proceed then to the merits.

## II.

In 1949, plaintiff had had considerable experience in the electronics field. During and immediately after the Second World War he had held several civilian and military federal jobs, working in electronics at military installations in North Carolina, Hawaii, and elsewhere. In 1946 he had returned to the continental United States and had begun to work for a private firm. In late 1949, he answered an advertisement, placed by RCA in an Atlanta newspaper, for a person with his qualifications. Plaintiff responded with his resume and was given an examination in Atlanta by RCA to determine whether he possessed their minimum qualifications.

RCA assigned plaintiff to Wright-Patterson AFB, Ohio. Before going to Ohio from Georgia, however, he stopped at an RCA office in Gloucester, New Jersey, where he was informed that his employment by RCA was contingent on approval by military personnel. At the base he was interviewed as to his qualifications by a First Lieutenant Johnson, who found plaintiff acceptable for the job. As this interview assumes great importance in plaintiff's argument, we quote Johnson's recollection of it.[11]

On or about 15 December 1949, I accepted Mr. J. R. Costner as an RCA contractor technician to perform services in teletype maintenance for the United States Air Force. Mr. Costner's services were more than satisfactory and a laudatory letter was sent to his company supervisor in RCA.

---

**7.** 5 U.S.C. §§ 8331–8348 (1976).

**8.** *United States v. Testan*, 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976).

**9.** *Peters v. United States*, 187 Ct.Cl. 63, 68, 408 F.2d 719, 721 (1969).

**10.** *Costner v. Campbell, supra* note 1, Memorandum and Order at 3.

**11.** Statement of Ralph E. Johnson, dated 21 August 1973.

Costner was subsequently transferred three times to different air bases. Plaintiff described the process as the Air Force informing RCA of vacancies and RCA asking him specifically to fill them. He would subsequently be issued orders of the type normally given to regular military personnel.

In 1953, when plaintiff was transferred to Andrews AFB, he was again interviewed and accepted by a military officer. He was not accepted at first, but after contacting his former military commander at Wright-Patterson he was. RCA did not participate in plaintiff's maneuvering to obtain acceptance, but it was informed of the actions taken. The officer who accepted him described their interview this way: [12]

> In approximately December 1953 I interviewed Mr. Robert J. Costner [*sic*], an applicant on the RCA contract, and accepted him as an engineer on my staff. He worked directly under my supervision in the Receiver Engineering division * * *.

Throughout the period of employment as Contract Technical Service Personnel, his direct supervision came primarily from military personnel. He was periodically evaluated by RCA, but these evaluations were based on comments from military supervisors. It is agreed that his employment could have been terminated had the Air Force found him unacceptable. He was granted post exchange and officers' club privileges; however, he admitted that this was discretionary with the base commander and points to no uniform Air Force policy on the subject. He received his pay (regular, overtime, and raises) and paychecks from RCA; RCA kept his personal file; he was always listed as an RCA employee;[13] he contributed to the RCA annuity plan and

presently receives benefits under it; he did not contribute to the civil service plan; and he named RCA as his employer on his income tax returns. He received various RCA internal reports and documents. In fact, at one point, plaintiff was responsible for submitting his group's time sheets to RCA and informally evaluating other contract personnel for RCA.

This situation continued until 1963, when he was offered a permanent civil service position. He resigned from RCA, effective June 23, 1963, and began his civil service appointment on June 24, 1963. This job was advertised through usual Civil Service Commission procedures, and plaintiff applied for it in the standard way, with Standard Form 52. He served the 1-year probationary period required of all new Government employees. While he apparently took on new supervisory tasks upon being appointed to the civil service, his actual duties did not change substantially.

At the time of his appointment in 1963, Costner did not protest a starting date for annuity purposes of some time in 1957, which accounted for his federal employment in the early 1940's but not for his 1949–63 service. It was not until 1973 that plaintiff began his administrative endeavor to receive credit for his RCA contract work. Plaintiff retired in 1976 and receives civil service annuity payments on the basis of the 1957 date established in 1963.

### III.

There is no dispute as to the applicable statutory provision. "Employee" is defined in the United States Code [14] as a person who is

---

**12.** Statement of R. W. Coward, dated 26 June 1973.

**13.** Assignment orders, for example, though they were from the Air Force, clearly indicate that plaintiff was considered an employee of RCA, which was under contract to the Air Force. None of plaintiff's other exhibits of Air Force Manuals makes any express statement inconsistent with contract employees being anything other than just that.

**14.** 5 U.S.C. § 2105(a) (Supp. III 1979).

Section 2105(a) was first enacted in 1966 in the wholesale revision of title 5. Pub.L. No. 89–554, 80 Stat. 378, 89th Cong., 2d Sess. (1966). The legislative history is quite clear, however, that its provisions represented existing law and made no changes in the substantive requirements imposed on plaintiff. *See* H.R.Rep.No. 901, 89th Cong., 1st Sess. 3, 17 (1965); S.Rep.No. 1390, 89th Cong., 2d Sess. 47 (1966). The commission has used precisely these criteria since 1944. *Stapleton v. Macy,*

(1) appointed in the civil service by one of the following acting in an official capacity—

&ast; &ast; &ast; &ast; &ast; &ast;

(C) a member of a uniformed service;

(D) an individual who is an employee under this section;

&ast; &ast; &ast; &ast; &ast; &ast;

(2) engaged in the performance of a Federal function under authority of law or an Executive act; and

(3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

It is obvious from the statutory language that there are three elements to the definition—appointment by an authorized federal employee or officer, performance of a federal function, and supervision by a federal employee or officer—and that they are cumulative. A person must satisfy each requirement.[15]

There is no dispute that plaintiff performed a federal function or that he was supervised by a federal officer or employee; defendant has never challenged this. The narrow issue, then, is whether plaintiff was *appointed* within the meaning of section 2105(a)(1). This court recently faced the same issue in *Baker v. United States.* The plaintiff in that case wanted retirement credit for his work with a federal-state cooperative program. New York State received federal funds for this program, and it was administered by the United States Department of Labor. Baker originally worked for the New York State Employment Service. He chose to join the joint program, worked at it for 8 years, and then joined the Department of Labor. In *Baker,*[16] we stated:

If [plaintiff] did not have a federal appointment, it will not be necessary to consider the other two requirements, as it is well settled that all three tests must be met by an individual before he can be a federal employee.

This interpretation of section 2105(a)(1), by which we are bound, disposes of the relevance of many of the cases and much of the evidence cited to us by plaintiff.

■ 1. This view of the law eliminates a "totality of the circumstances" approach. An abundance of federal function and supervision will not make up for the lack of an appointment. Plaintiff's efforts to show that he was doing tasks that would otherwise be performed by a federal employee do demonstrate that he performed a federal function, but that is all. Likewise, plaintiff's heavy reliance on the opinions of the Civil Service Commission, of Secretary of Defense Robert McNamara, and of the Comptroller General that the Contract Technical Service Personnel program was not legally authorized is of no help. Putting aside the fact that these opinions all post-date plaintiff's disputed employment, and the fact that they cannot be said to bind a court, they only show that the particular use of persons like plaintiff was not authorized. In any case, there is no implication that the proper remedy is retroactively to make them employees, and, absent appointment, there is no statutory authority for such an action. At most the opinions show that the jobs were in all respects, except appointment, the same as employment, but we have already stated that that is not sufficient.

For this reason also, the *Lodge 1858* case is not apposite. Plaintiff cites the case for

---

304 F.2d 954, 955 n.3 (D.C.Cir.1962) (affirming the validity of the statutory factors).

The section 2105(a) definition is made applicable to the eligibility for annuities by 5 U.S.C. § 8331(1)(A).

**15.** *Baker v. United States,* 222 Ct.Cl. ——, 614 F.2d 263, 266 (1980); *Goutos v. United States,* 212 Ct.Cl. 95, 98, 552 F.2d 922, 924 (1976); *Lodge 1858, Am. Fed'n of Gov't Employees v. Webb,* 580 F.2d 496, 504 (D.C.Cir.), *cert. de-*

*nied,* 439 U.S. 927, 99 S.Ct. 311, 439 U.S. 927 (1978). *See also United States v. Testan, supra* note 8.

**16.** *Baker v. United States, supra* note 15, 222 Ct.Cl. ——, 614 F.2d at 266–67. *See also United States v. Testan, supra* note 8, 424 U.S. at 402; *Walton v. United States,* 213 Ct.Cl. 755, 756 (1977).

the proposition that supervision is equal to employment. But this mistakes the *Lodge* plaintiff's claim. The Lodge did not assert that the contractors were employees. Their complaint was that they were *not* employees and that it was unfair for the Government not to include them in a reduction in force (RIF). The legal question presented was whether NASA was *authorized* to enter into the contracts with the contractors, and the relief asked was not making them employees but laying them off first. The court only ruled on the legality of the contracts.

2. Our prior interpretations also dispose of the arguments based largely on the amount of supervision. Plaintiff's reliance on the common law master-servant relationship and the so-called Pellerzi Elements[17] is thus misplaced. The Pellerzi Elements "relate primarily to the [supervision] statutory criteri[on]," which is essentially the common law test for the master-servant relationship.[18] It is elementary that the common law does not control federal relationships, especially where, as here, the federal statute expressly goes beyond the common law and requires more than just the supervisory relationship.

It is also the case that the common law master-servant doctrine was intended to provide a different function altogether. It was designed primarily to distinguish between an employee and an independent contractor. Here, by contrast, the question is not whether plaintiff *was* an employee (he was), but *whose* employee. This renders the common law definition of little use.

For this reason, the *Jankovic* case,[19] relied upon heavily by plaintiff, is of little help here. Jankovic was a translator for the State Department and had a contract which explicitly stated that he was not an employee. However, the district court held that, *as opposed to being employed by no one*, Jankovic was employed by the Government. The case speaks entirely in terms of amount of supervision,[20] and in addition suggests that the Department was willfully circumventing its duty to its employees,[21] a situation not present here. *Taylor v. Hampton*,[22] a very similar case also heavily relied upon by plaintiff, suffers the same defect. There the court only held (if it can be said to have held anything; there was no opinion) that the Government may not avoid employee status by the subterfuge of making employees "grantees."[23]

In addition, the equitable argument for requiring an employer to assume his responsibilities does not exist in plaintiff's case. Plaintiff does not argue that he is unjustly covered by *no* annuity plan; he disputes *which* plan.

We therefore decline to adopt a common law basis for determining federal employment, because the common law does not control federal statutes, because the federal

---

**17.** These consist of "the six elements or standards [footnote omitted] set forth in an opinion written in October 1967 by Leo Pellerzi, then General Counsel of the Civil Service Commission, as to the legality of two representative NASA support service contracts." *Lodge 1858, Am. Fed'n of Gov't Employees v. Administrator, NASA*, 424 F.Supp. 186, 190 (D.D.C.1976), aff'd, *Lodge 1858 v. Webb*, supra note 15. The court of appeals pointed out that the Pellerzi Elements were to be used to determine the legality of contracts, not the existence of employment. 580 F.2d at 499–500.

**18.** *Lodge 1858 v. Administrator, NASA*, supra note 17, 424 F.Supp. at 194.

**19.** *Jankovic v. United States*, 384 F.Supp. 1355 (D.D.C.1974).

**20.** *Id.* at 1359. The court did not discuss the lack of an official appointment, but we may surmise that the court assumed that the contract between the Government and Jankovic supplied that requirement. We do not pass upon whether or not that assumption (if made) is consistent with the law. In the present case, there was no direct contract between Costner and the Government. To the extent, however, that *Jankovic* can be read as not insisting on the appointment requirement, we decline to follow it.

**21.** *Id.*

**22.** *Taylor v. Hampton*, Civil Action No. 1178 (D.D.C.1974).

**23.** As stated in note 20, *supra*, to the extent that *Taylor* does not insist on an appointment, we decline to follow it.

statute expressly rejects the common law test based solely on degree of supervision, and because the common law test does not address the question presented here.

3. The cases [24] defining employee under the Fair Labor Standards Act [25] are also inapposite. For one thing, that act contains its own definition of "employee," raising a presumption that it is intended to apply to that statute alone. This is conclusively established by the fact that title 5 has its own definition, the one in contention here. In addition, the purpose of the act's definition was, like the common law,[26] to force employers to live up to their responsibilities. That is not the issue here. The title 5 definition is intended to serve a very narrow purpose and that purpose is not served by substituting other definitions.[27]

The sole issue in this case being whether plaintiff was in fact "appointed to [his] position by a person authorized to make the appointment," [28] the case is controlled by *Baker* and *Goutos* and accordingly we examine the facts bearing on that issue.

### IV.

Recognizing the need for an actual appointment, plaintiff's precise factual contention must be, as plaintiff stated at oral argument, that "Costner was accepted into the military [29] by * * * an individual specifically provided for in the statute." The question is whether Lieutenant Johnson's interview with plaintiff constituted such an appointment.

At the outset, it might be noted that the force of this claim is diminished by the fact that a virtually identical interview took place in 1953 with Captain Coward. Logically, then, plaintiff must be claiming that Coward *rehired* him, and that he was *re*hired yet again in 1963 through more normal channels. This is simply not borne out by the facts. The documentation of all of this hiring (and presumably termination) activity are transfer lists, listing plaintiff as an RCA employee, and a single Form 52 executed in 1963. Not only is it unlikely that federal hiring and termination in 1949 and 1953 would be undocumented, but this court has held that a Form 52 is "the *sine qua non* to [an] appointment." [30] The clear inference is that plaintiff was appointed *once*, within the meaning of section 2105, in 1963.

The statutory language requiring that the appointing official be "acting in an official capacity" must mean that the official was "a person authorized to make the appointment." [31] There is no indication in the record that Lieutenant Johnson or Captain Coward was so authorized. Certainly their statements do not reflect this. In fact, the indications are all to the contrary: every document cited by plaintiff refers to contract personnel as just that.

The language of the statements of the putative hiring officers is equally unhelpful to plaintiff. Neither claim that they "hired" plaintiff, to say nothing of "ap-

---

**24.** *Fruco Constr. Co. v. McClelland*, 192 F.2d 241 (8th Cir. 1951), *cert. denied*, 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703 (1952); *Lewis v. Virginia Eng'r Co.*, 80 F.Supp. 886 (E.D.Va. 1947).

**25.** 29 U.S.C. §§ 201–219 (1976).

**26.** *See Fruco Constr. Co. v. McClelland, supra* note 24, 192 F.2d at 244.

**27.** *See Goutos v. United States, supra* note 15, 212 Ct.Cl. at 99, 552 F.2d at 925 (a broad definition of employee would be chaos; the Government would not know who was and who was not its employee).

**28.** *Baker v. United States, supra* note 15, 222 Ct.Cl. at ——, 614 F.2d at 268.

**29.** This is in itself unlikely. There is no showing that plaintiff was a member of the Armed Forces. Counsel later qualified this by stating that plaintiff was in the civil service employ of the military.

**30.** *Goutos v. United States, supra*, note 15, 212 Ct.Cl. at 98, 552 F.2d at 924. *But see National Treasury Employees Union v. Reagan*, 663 F.2d 239 (D.C.Cir. 1981).

**31.** *Baker v. United States, supra* note 15, 222 Ct.Cl. at ——, 614 F.2d at 268. *See also Goutos v. United States, supra* note 15, 212 Ct.Cl. at 98, 552 F.2d at 924.

pointing" him. Johnson said that he "accepted Mr. J. R. Costner as an RCA contractor technician" and that he sent a laudatory letter "to his company supervisor in RCA." Coward described plaintiff as "an applicant on the RCA contract" and his own actions as "accept[ance]." These statements, the only direct evidence plaintiff produces in support of his precise factual contention, and the lack of any evidence that he took an oath of office, in fact rebut his claim.

Finally, the fact that plaintiff was on the payroll of RCA, received his checks and raises from RCA, and participated in the RCA annuity plan, obviate any claim that he was a Government employee. Plaintiff recognized this on his income tax forms and in his contemporary acceptance of the denial of retirement credit. The fact that the Government is ultimately paying an individual's salary does not make him a federal employee. In *Baker*, the plaintiff, like Costner, knew that the Federal Government was ultimately paying his salary, but this court held that this was not enough without an appointment.[32]

In sum, the facts do not support plaintiff's arguments that he received "absolutely" no direction from RCA and that, with the sole exception of his paycheck, RCA had absolutely no responsibility for or control over him. There is substantial evidence to support the board's decision that plaintiff was never appointed to a federal position during the period in dispute. That decision is in accord with prior rulings of this court, and we affirm it. In view of the result, we have no occasion to consider the other defenses raised by defendant.

## V.

Plaintiff's motion for summary judgment is therefore denied on the merits, defendant's cross-motion is granted, and the petition is dismissed.

---

**32.** *Baker v. United States, supra* note 15, 222    Ct.Cl. at ——, 614 F.2d at 265, 268–69.