**Angelo James SKALAFURIS**

v.

**The UNITED STATES.**

**No. 438–80C.**

United States Court of Claims.

June 30, 1982.

---

Steffen W. Graae, Washington, D. C., attorney of record, for plaintiff. Jeffrey M. Glosser and Mirel & Graae, P. C., Washington, D. C., of counsel.

Mary S. Mitchelson, Washington, D. C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and KASHIWA and SMITH, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

SMITH, Judge, delivered the opinion of the court:

Plaintiff's case is the most recent in a series of cases which have called upon the court to define what constitutes federal employment.[1] The dispute here concerns the date on which plaintiff commenced employment with the Government. Upon that determination depend the procedural rights to which he was entitled upon termination. The Government contends that the date entered on various personnel action forms controls; plaintiff argues that he was appointed and commenced work at least a month earlier. It is not disputed that, if he was no longer a probationary employee at the time of his termination, plaintiff was not accorded all of the procedural rights to which a nonprobationary employee is entitled. The Civil Service Commission[2] decided that plaintiff was a probationary employee at the time of his termination. We hold that, as a matter of law, this was correct.

I.

On October 29, 1973, the Naval Research Laboratory (NRL) advertised an opening for the GS–15 position of Head, Mathematics Research Center (MRC). Plaintiff applied for the job in November 1973 and was interviewed at NRL in December. He was selected as the best candidate in January 1974 by Dr. Paul Richards. Dr. Richards then sent a memorandum, with attached routing slip, to Dr. Herbert Rabin and Dr. Alan Berman, making this recommendation and asking for their approval. The memorandum was dated January 22, 1974, and Drs. Rabin and Berman signified their approval by initialing the routing slip on January 29 and 30, 1974, respectively. Plaintiff had been informed of his selection by

1. See Costner v. United States, 229 Ct.Cl. ——, 665 F.2d 1016 (1981); Baker v. United States, 222 Ct.Cl. 263, 614 F.2d 263 (1980); Goutos v. United States, 212 Ct.Cl. 95, 552 F.2d 922 (1976).

2. Plaintiff's appeal of his termination was denied by the Federal Employee Appeals Authority on December 19, 1975. The Appeals Review Board declined to reconsider the case (not on the merits) on May 20, 1976. A fresh round of requests for reconsideration based on new evidence was initiated in December 1978, but all were ultimately denied by the Merit Systems Protection Board, successor to the Civil Service Commission, on June 5, 1980. Plaintiff filed his petition in this court on August 18, 1980.

The MSPB supplied the administrative record upon which we base our decision. While defendant has challenged a number of items plaintiff appended to his submissions in this court, suffice it to say that we rely upon nothing outside of the administrative record (save some material judicially noticeable in our decision. Plaintiff, however, correctly noted that the few additions he made were purely explanatory or for clarification and were not an attempt improperly to supplement the record.

telephone in mid-January, and a Standard Form 52 (SF–52), Request for Personnel Action, was prepared for him, as well as a request for Civil Service certification.

Plaintiff arrived at NRL immediately after approval of his selection. On January 31, 1974, he received a temporary identification badge. The record plainly shows that plaintiff was actively engaged in his new duties throughout February.[3] On February 22 and March 7, 1974, he was paid by voucher[4] for this work.

On March 4, 1974, plaintiff executed an Appointment Affidavit (the oath of office), and on March 5, 1974, a Standard Form 50 (SF 50), Notification of Personnel Action, was executed. Both of these documents, as well as the SF–52 completed earlier, give the effective date of plaintiff's appointment as March 5, 1974. The March 5th date is the one which the Government contends is the correct date of appointment.

On January 20, 1975, after nearly a year at NRL, plaintiff received a supervisor's evaluation from Dr. Richards which recommended his retention because he was performing well. However, on February 24, 1975, plaintiff received a memorandum from Dr. Berman stating that he would be terminated on March 3, 1975, for inadequate performance. The SF–50 which accompanied the termination notice was later superseded by another which gave no reason for termination.[5]

Plaintiff appealed his removal unsuccessfully for several years.[6] Upon receiving a final denial of reconsideration of his case on June 5, 1980, plaintiff filed in this court on August 18, 1980, for back pay and reinstatement to his original grade.

## II.

This court set out the law governing plaintiff's status as a federal employee in *Costner v. United States*:[7]

There is no dispute as to the applicable statutory provision. "Employee" is defined in the United States Code[14] as a person who is

(1) appointed in the civil service by one of the following acting in an official capacity—

\* \* \* \* \* \*

(C) a member of a uniformed service;

(D) an individual who is an employee under this section;

\* \* \* \* \* \*

(2) engaged in the performance of a Federal function under authority of law or an Executive act; and

(3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

3. Plaintiff has supplied the record with numerous letters, memoranda, logs, and other material which show plaintiff hard at work at MRC from, at the latest, February 6, 1974.

4. Only one of these vouchers is in the administrative record (Feb. 22, 1974), but the other is identical in all respects except amount of payment. We rely only upon the February 22d voucher. *See* note 2, *supra*.

These vouchers are for "services other than personal" and therefore technically improper for payment of fees to plaintiff. However, this impropriety has no legal significance for this case. Likewise, NRL's violation of regulations prohibiting use of plaintiff as a consultant does not create an appointment.

5. The true inwardness of this episode is somewhat unclear. After receiving a positive evaluation in January, plaintiff received the Berman memorandum which can only be described as a hatchet-job. Even Berman seemed to dissoci-

ate himself from it by writing "By direction" after his signature. The record also contains several testimonials to plaintiff's outstanding qualities from his subordinates, in reaction to the Berman memorandum.

There was a reorganization of NRL simultaneous to this episode, and the record invites the speculation—particularly in view of the changed SF–50—that the inadequacy charge was pretextual. Be that as it may, the court will assume for present purposes that plaintiff's job performance was at least satisfactory, though of course it need not have been proven unsatisfactory to permit his removal if he was a probationary employee.

6. *See* note 2, *supra*.

7. *Costner*, 229 Ct.Cl. at ——, 665 F.2d at 1019–20.

It is obvious from the statutory language that there are three elements to the definition—appointment by an authorized federal employee or officer, performance of a federal function, and supervision by a federal employee or officer—and that they are cumulative. A person must satisfy each requirement.[15]

* * * * * *

14. 5 U.S.C. § 2105(a) (Supp. III 1979). * * *

15. *Baker v. United States*, 222 Ct.Cl. [263, 268], 614 F.2d 263, 266 (1980); *Goutos v. United States*, 212 Ct.Cl. 95, 98, 552 F.2d 922, 924 (1976); *Lodge 1858, Am. Fed'n of Gov't Employees v. Webb*, 580 F.2d 496, 504 (D.C.Cir.), cert. denied, 439 U.S. 927, 99 S.Ct. 311, 58 L.Ed.2d 319 (1978). *See also United States v. Testan*, [424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976)].

The court went on to point out that an "abundance of federal function and supervision will not make up for the lack of an appointment." [8]

Plaintiff's case is in many respects similar to *Costner*, though its circumstances are somewhat more compelling in plaintiff's favor than they were in *Costner*. We grant that plaintiff, from late January 1974, was performing a federal function and was supervised by a federal employee. But as the court said in *Baker v. United States*, which considered this problem: [9]

> If [plaintiff] did not have a federal appointment, it will not be necessary to consider the other two requirements, as it is well settled that all three tests must be met by an individual before he can be a federal employee.

Thus, the work plaintiff did at NRL between late January 1974 and March 5, 1974,

8. *Id.*, 229 Ct.Cl. at ——, 665 F.2d at 1020.

9. *Baker*, 222 Ct.Cl. at 268, 614 F.2d at 266–67. *See also United States v. Testan*, 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976); *Walton v. United States*, 213 Ct.Cl. 755, 756 (1977).

10. *See* note 3, *supra.*

11. *Baker*, 222 Ct.Cl. at 272, 614 F.2d at 268.

12. *See Costner*, 229 Ct.Cl. at ——, 665 F.2d at 1022. This occurs "when the last act to be done by the [appointing authority] was performed * * *." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 156, 2 L.Ed. 60 (1803).

and the fact that he was represented to others as the head of MRC,[10] while important to an overall case for federal employment, do not bear directly on the question of appointment. We turn then to the facts bearing on the existence and date of plaintiff's appointment.

### III.

The standard to be applied here is whether plaintiff was "appointed to [his] position by a person authorized to make the appointment." [11] At the outset, it is conceded that the persons who selected and approved the selection of plaintiff were persons "authorized to make the appointment." Therefore, the question before us is only whether plaintiff was in fact appointed.

■ Recognizing that appointment is a single, discrete act,[12] plaintiff argues that he was appointed by the action of Dr. Rabin's initialing the routing slip on January 29, 1974. We cannot agree, however, that Dr. Rabin's act had that effect.

■ The documents effecting plaintiff's appointment all specify March 5, 1974, as plaintiff's date of appointment. The SF-52 gives "3–5–74" as the effective date for the requested action, which is described as "C[areer] C[onditional] *Appt*" (emphasis supplied).[13] It is hardly coincidental that the next personnel action documents were not executed until on or about March 5, 1974. On the Appointment Affidavit, signed on March 4th, the space for "(Date of appointment)" is filled in with "3/5/74." [14] Finally, the actual notification

13. The Request for Certification, submitted contemporaneously with the SF–52, says nothing about a date of appointment. The notation that plaintiff was immediately available for work has no significance in this connection.

14. Plaintiff points out that the "5" in the date has been written over another number and points to this as an example of NRL manipulation of the date of appointment. However, the "5" represents only the day of the month, so whatever was in that place to begin with, it could not place the date of appointment in January or February.

form, the SF–50, gives "03/05/74" as the effective date of plaintiff's "CAREER CONDITIONAL APPOINTMENT." Furthermore, the SF–50 notes that the appointment is "subject to completion of 1 year probationary (or trial) period commencing 03/05/74." We have in past cases emphasized the importance of the SF–52, SF–50, and oath of office in determining the date or existence of an appointment,[15] and in this case they unequivocally set the date of appointment at March 5, 1974.

The Government was completely consistent in setting at March 5, 1974, the date of appointment and the beginning of the probationary period. An SF–50 of October 11, 1974, effecting a general pay increase, dated plaintiff's service computation date at March 5, 1974. The supervisor's laudatory report entered "03–05–75" as the "date trial/probationary period ends," and at the bottom of the form is typed, "Prob. period began 03–05–74." The documents mentioned so far are particularly probative because they all predate those events which seem to suggest a motive to remove plaintiff with a minimum of procedural rights.[16] The pre-reorganization documents make clear that the Government consistently viewed plaintiff's date of appointment as March 5, 1974, while NRL was still satisfied with plaintiff and (presumably) intended to retain him on a permanent basis. The notations on the supervisor's laudatory report are especially persuasive in this regard.

The Government also viewed plaintiff's February 1974 status at NRL consistently with a March 5, 1974, date of appointment. The request for a temporary identification badge describes plaintiff's need for it this way: "[plaintiff] will be coming in as a consultant for at least two weeks"; and "[c]onsultative services may require after hours work" (emphasis supplied). The February 22, 1974, voucher—as opposed to salary—by which plaintiff was paid for his February work describes the service thus:[17]

> Payment of fee as visiting consultant to the Superintendent. Mathematics and Information Sciences Division. (Payment is for 3 weeks consulting services[.]) [Emphasis supplied.]

We may therefore conclude, on the basis of all of the Government documents which purport to describe plaintiff's status, that plaintiff was appointed on March 5, 1974, and that his probationary period ended on March 5, 1975, two days after he was terminated.

■ We have only left to discuss plaintiff's direct evidence for an earlier appointment date, the routing slip. The first key point is that the memorandum being approved on the slip does not recommend the appointment of plaintiff. Rather, it recommends "that Dr. Skalafuris be offered the GS–15 position as Head of the Mathematics Research Center" (emphasis supplied). While we have no doubt that in approving this recommendation Drs. Rabin and Berman expected and intended that plaintiff would eventually be appointed, the fact is that the process had not progressed to the appointment stage at that point. Plaintiff still had to be notified of the offer, had to accept it, NRL needed to request the appointment, the Civil Service Commission had to certify plaintiff, and plaintiff had to take his oath of office. It is hard to believe

---

15. Goutos, 212 Ct.Cl. at 98, 552 F.2d at 924 (SF -52, in facts of that case, is "the sine qua non to [an] appointment"); Shaw v. United States, 223 Ct.Cl. 532, 546, 622 F.2d 520, 528, cert. denied, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105 (1980) (in determining date of end of probationary period, the Civil Service Commission properly looked to "the date of his appointment evidenced in Standard Form 50"); Costner v. United States, 229 Ct.Cl. at ——, 665 F.2d at 1023 (importance of oath of office). See also Vukonich v. Civil Serv. Comm'n, 589 F.2d 494, 496 (10th Cir. 1978) (completion of an SF -50 necessary to appointment).

16. See note 5, supra.

This fact distinguishes this case from Summers v. United States, 227 Ct.Cl. ——, ——, 648 F.2d 1324, 1327 (1981), wherein the court held that the Government could not circumvent the law by failing to execute the proper forms. The pre-reorganization forms predate any motive to circumvent the law.

17. The March 7, 1974, voucher not in the record contains identical language except as to the amount of time. We do not rely upon it. See note 4, supra.

that Drs. Rabin and Berman thought they were appointing plaintiff, even if they had had the power to do so at that point. This can hardly be characterized as the "last act" defined in *Marbury v. Madison*.[18]

Furthermore, it would seem to us very odd that the Government appointive process should be consummated by initials on a routing slip.[19] We emphasize, as we noted in *Goutos v. United States*, the chaotic effect on the Government of a vague or informal procedure for Government hiring.[20] Plaintiff cannot base his appointment on the initialed approval of a memorandum recommending that he be given an offer.

Plaintiff cites *National Treasury Employees Union v. Reagan*[21] (NTEU) in support of his argument that the approvals were an appointment. The Government argues that this court in *Costner* rejected NTEU.[22] On the facts of this case, there is no conflict.[23] The District of Columbia Circuit in NTEU said:[24]

> We note initially that the problem before us arises only because the statutes and regulations concerning this appointment process are unclear. Congress or an executive agency it authorized could establish a process in which the point of appointment was specified, or obvious beyond dispute. *See, e.g.,* 5 U.S.C. § 3301(1) (1976). Neither has done so.

Even absent statutory or regulatory clarification, the ambiguity in these cases might have been resolved had the relevant authorities included in the written notification of selection some indication that appointment itself was conditioned upon some future discretionary event. *Cf. Goutos v. United States*, 552 F.2d 922 (Ct.Cl.1976) (necessity of filling out form clear to all involved in process). Here, however, the "selection" was stated in absolute terms. In the absence of authoritative guidance, therefore, this court must proceed to determine whether appointments actually occurred.

This court has not held that where the facts surrounding the appointment are ambiguous we will never look to surrounding circumstances for guidance. The facts in the present case, however, are not ambiguous: the Government made it clear at every opportunity and in every way at its disposal that there was no appointment until March 5, 1974. If plaintiff here relied upon his probation period ending in January 1975, he did so in spite of every document he had been given.[25]

■ We therefore conclude, after careful consideration of the briefs and after hearing oral argument, that the Civil Service Commission was correct as a matter of law

---

18. *Marbury,* 5 U.S. (1 Cranch) at 156.

19. *See Costner,* 229 Ct.Cl. at ——, 665 F.2d at 1022 (unlikely that federal hiring would be undocumented).

20. *Goutos,* 212 Ct.Cl. at 99, 552 F.2d at 925.

21. *National Treasury Employees Union v. Reagan,* 663 F.2d 239, 242–50 (D.C.Cir.1981) [hereinafter *NTEU*].

22. *Citing Costner,* 229 Ct.Cl. at —— n.30, 665 F.2d at 1022 n.30.

23. We are not convinced that, in any case, *NTEU* would be applicable to the present situation. The *NTEU* situation was extreme, involving the total countermand by the President of the selection process. The court of appeals insisted that the President could not unilaterally nullify that process in its entirety. Here, by contrast, the selection process operated normally and the court is affirming adherence to it.

24. *NTEU,* 633 F.2d at 242.

25. Our conclusion in this case disposes of plaintiff's claim that, under the Federal Personnel Manual (FPM), ch. 315, app. A, § 3c(1), his probationary period began when he commenced work at NRL in January 1974. Section 315–A–3c(1) permits the application of actual prior service in the same job to the mandatory probationary period. It states:

"* * * Prior service which meets all of the following specifications is counted:

"(a) It was rendered immediately preceding career or career-conditional appointment or conversion. *Employees must have been on the rolls of the agency at the time of the career or career-conditional appointment or conversion.*" (Emphasis supplied.)

The discussion in this opinion of plaintiff's situation should make clear that he was not "on the rolls" of NRL until March 5, 1974. Therefore, he cannot take advantage of this provision.

in finding that plaintiff was not appointed to his position until March 5, 1974, and that consequently he was still in his probationary period when he was terminated on March 3, 1975. Because of this disposition of the case, we do not address the other defenses raised by the Government. There being no genuine issue as to any material fact, defendant's cross-motion for summary judgment is granted; plaintiff's motion for summary judgment is denied; and the petition is dismissed.