O. Kenneth BAKER and John R. Langenbach

v.

The UNITED STATES.

No. 88–78.

United States Court of Claims.

Jan. 23, 1980.

Philip G. Sunderland, Washington, D. C., attorney of record for plaintiffs; Bruce J. Terris, Washington, D. C., of counsel.

Ransey G. Cole, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant; Lydia Parnes, Washington, D. C., of counsel.

Before SKELTON, Senior Judge, KASHIWA and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

SKELTON, Senior Judge:

O. Kenneth Baker, plaintiff, a former employee of the Department of Labor (DOL), seeks retirement credit under the Civil Service Retirement Law (5 U.S.C.A. §§ 8331–8348) for his service in a federal-state cooperative program in the State of New York. The case is before us on cross-motions for a partial summary judgment.[1]

The facts on which Baker bases his claim are as follows: From October 1, 1931, to April 14, 1941, he was employed by the New York State Employment Service (NYSES), an agency of the State of New York. On June 6, 1933, the Wagner-Peyser Act (Act of June 6, 1933, ch. 49, 48 Stat. 113), 29 U.S.C. § 49, *et seq.* was enacted, establishing a federal-state cooperative program designed to reduce unemployment. After electing to participate in this program, which was administered by the United States Employment Service (USES) of the DOL, the State of New York received funds and technical assistance under the Act. From June 6, 1933, to April 14, 1941 (the time period forming the basis of Baker's claim for retirement credit in his motion), Baker participated in this federal-state cooperative employment program through his service with the NYSES. On April 15, 1941, Baker became an employee of the DOL and remained an employee until his retirement from that Department on May 1, 1971. On September 11, 1945, Baker submitted an Application for Service Credit to the Civil Service Commission (CSC) requesting retirement credit for his service with the NYSES from January 1, 1940, through April 14, 1941. This request was denied. After his retirement on May 1, 1971, Baker began drawing an annuity based upon his service with the DOL from April 15, 1941, to May 1, 1971. His service with the NYSES was not included. On September 10, 1976, Baker filed a claim with the CSC for retirement credit for his prior service with the NYSES. On January 18, 1977, the Bureau of Retirement, Insurance and Occupational Health denied his claim. On January 28, 1977, he appealed the Bureau's denial of his claim to the CSC's Board of Appeals and Review. The Board affirmed the Bureau's decision on December 2, 1977. On December 27, 1977, Baker requested reconsideration of the Board's decision by the Commissioners of the CSC. His request was denied by the Commissioners on February 8, 1978. On March 14, 1978, Baker filed the present suit in this court. He contends that he is enti-

---

1. John R. Langenbach is also a plaintiff herein, but as explained below, his claim is not before us in this proceeding. Baker and Langenbach also bring this suit on behalf of William H. Brown, but, as shown below, his claim is not before the court.

tled to retirement credit under the federal CSC laws for his service with the NYSES because he was a federal employee during his service with that program. He argues that his employment and work in New York satisfied the three-fold test for federal employment set forth in 5 U.S.C. § 2105, namely, federal appointment, federal supervision, and federal function. Consequently, he says that he should be allowed retirement credit for such service.

There is a serious question whether Baker's suit was timely filed, but we find it unnecessary to decide that question because we think that on the merits he clearly cannot recover.

The case presents the basic issue of whether Baker's service with the NYSES meets the three-fold test for federal employment.[2]

## I. FEDERAL EMPLOYMENT

As stated above, Baker claims that his work with the NYSES was creditable service performed by him as a federal employee that entitles him to additional annuity payments. He bases his claim for such retirement credit on 5 U.S.C.A. § 8332, which states in pertinent part:

"§ 8332. Creditable service

(a) The total service of an employee or Member is the full years and twelfth parts thereof, excluding from the aggregate the fractional part of a month, if any.

(b) *The service of an employee shall be credited* from the date of original employment to the date of separation on which title to annuity is based in the civilian service of the Government." (Emphasis supplied).

The Government contends that Baker was not employed by the Federal Government for the NYSES work. The definition of an "employee" for CSC purposes is contained in 5 U.S.C. § 2105[3] which states:

"§ 2105. Employee

(a) For the purpose of this title, *'employee'*, except as otherwise provided by this section or when specifically modified, means an officer and an individual who is—

(1) *appointed* in the civil service by one of the following acting in an official capacity—

(A) the President;

(B) a Member or Members of Congress, or the Congress;

(C) a member of a uniformed service;

(D) an individual who is an employee under this section;

(E) the head of a Government controlled corporation; or

(F) the adjutants general designated by the Secretary concerned under section 709(c) of title 32, United States Code;

(2) *engaged in the performance of a Federal function* under authority of law or an Executive act; and

(3) *subject to the supervision* of an individual named by paragraph (1) of this subdivision while engaged in the performance of the duties of this position." (Emphasis supplied).

■ It is obvious, therefore, that for Baker to be considered a "federal employee", he must meet *all three* tests of this statutory definition, i. e., federal appointment, federal supervision, and federal function. We will first consider the federal appointment portion of this three-fold test. If Baker did not have a federal appointment, it will not be necessary to consider the other two requirements, as it is well settled that all three tests must be met by

---

**2.** To avoid confusion, it should be pointed out that the retirement benefits that Baker is receiving for his service as an employee of the Department of Labor are not involved in this case. We are only concerned with his claim for retirement benefits for his prior service in New York for the New York State Employment Service.

**3.** 5 U.S.C.A. § 8331 contains the definition of an "employee" for the purposes of civil service retirement. This definition includes that which is set forth in 5 U.S.C.A. § 2105, and contains other provisions which are not relevant to the claim under consideration in this case.

an individual before he can be a federal employee.

■■■ Baker contends that he meets the federal appointment requirement based on a CSC ruling in 1957 involving employees in the Extension Service of the United States Department of Agriculture.[4] That case involving employees of the extension service program of the U.S.D.A. is not now before us and, therefore, we cannot review it. Baker's claim will be decided only on the facts upon which it is based and in accordance with the Constitution and existing statutory and case law. We cannot consider a past CSC ruling in another case not before us, particularly the one upon which Baker relies, because, as far as we know, it involved a different set of facts and a different statutory framework. If the CSC ruling in that case complied with the relevant statutory provisions, then it was correct as far as it applied to those individuals involved and their particular circumstances. On the other hand, if the ruling violated the statutes, then it was invalid. However, we are in no position to say whether it was valid or invalid since that case is not before us. Even if the ruling there by the CSC were unauthorized, the Government is not thereby estopped to correctly apply the annuity retirement law to Baker's claim in the instant case. *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). The CSC could not by a ruling change the law enacted by Congress. *See Montilla v. United States*, 457 F.2d 978, 198 Ct.Cl. 48 (1972). However, it could change its interpretation of the law. This is frequently done by government departments, especially the Internal Revenue Service. It is not unusual for the IRS to reverse its position on a particular tax problem, but such reversal does not change the statutory law. We must apply and enforce the law in the case here regardless of what the CSC may have done in the past in another case.

Our review of the law governing government positions and appointments thereto must begin with the United States Constitution. Article 2, Section 2, Clause 2 of the Constitution provides as follows:

"He [the President] shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur; and he shall nominate, and by and with the Advice and Consent of the Senate, *shall appoint* Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other *Officers of the United States*, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law *vest the Appointment of such inferior Officers*, as they think proper, *in the President* alone, *in the Courts of Law, or in the Heads of Departments*." (Emphasis supplied).

While the Constitution speaks only of the appointment of "Officers" and "inferior Officers" and not of employees, these terms are, in practice, synonymous. This fact is recognized by 5 U.S.C.A. § 2105 which defines an "employee" as an "officer and individual." Also, in this regard, the Supreme Court in considering the differences between a government officer and an employee and how they obtain their respective positions stated in *Burnap v. United States*, 252 U.S. 512, 40 S.Ct. 374, 64 L.Ed. 692 (1920):

"The term 'employ' [as used in a statute, Rev.Stat. § 169, stating that a head of a Department is authorized to employ clerks, etc.] is used as the equivalent of appoint.

.     .     .     .     .

"The distinction between officer and employee in this connection [the interpretation of Rev.Stat. § 169] does not rest upon differences in the qualifications necessary to fill the positions or in the character of the service to be performed. *Whether the incumbent is an officer or an employee is determined by the manner*

---

4. In a 1957 Minute the CSC ruled that the service of individuals in the Department of Agriculture cooperative extension service program met the federal appointment requirement for creditable service.

*in which Congress has specifically provided for the creation of the several positions, their duties and appointment thereto.*" 252 U.S. at 515–16, 40 S.Ct. at 376, 64 L.Ed. at 694. (Emphasis supplied). Thus, the Supreme Court has recognized that the primary difference between a government officer and a government employee is determined by how their respective positions are created and that, in any event, an appointment to a government position, whether it be as an officer or employee, is necessary before a person can hold a government job and receive the salary and perquisites pertaining thereto.

The Supreme Court has on numerous occasions recognized the necessity for an appointment to a government position before a person can be an officer of the government. In *United States v. Smith*, 124 U.S. 525, 8 S.Ct. 595, 31 L.Ed. 534 (1888), the court said:

"An officer of the United States can only be appointed by the president, by and with the advice and consent of the senate, or by a court of law, or the head of a department. A person in the service of the government who does not derive his position from one of these sources is not an officer of the United States in the sense of the constitution. This subject was considered and determined in *United States v. Germaine*, 99 U.S. 508 [25 L.Ed. 482,] and in the recent case of *United States v. Mouat*, 124 U.S. 303 [, 8 S.Ct. 505, 31 L.Ed. 463.] What we have here said is but a repetition of what was there authoritatively declared." 124 U.S. at 531–32, 8 S.Ct. at 597, 31 L.Ed. at 536.

And in *United States v. Mouat*, 124 U.S. 303, 8 S.Ct. 505, 31 L.Ed. 463 (1888), the court stated:

"Unless a person in the service of the government, therefore, holds his place by virtue of an appointment by the president, or of one of the courts of justice or heads of departments authorized by law to make such an appointment, he is not, strictly speaking, an officer of the United States.

"We do not see any reason to review this well established definition of what it is that constitutes such an officer." 124 U.S. 307, 8 S.Ct. at 506, 31 L.Ed. at 464.

In the more recent case of *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), the Supreme Court stated the rule, as follows:

"The established rule is that one is not entitled to the benefit of a [government] position until he has been duly appointed to it. *United States v. McLean*, 95 U.S. 750, 24 L.Ed. 579 (1878); *Ganse v. United States*, 376 F.2d 900, 902, 180 Ct.Cl. 183, 186 (1967)." 424 U.S. at 402, 96 S.Ct. at 955, 47 L.Ed.2d at 123.

Additionally, this court followed this general proposition in *Goutos v. United States*, 552 F.2d 922, 212 Ct.Cl. 95 (1976), where we held:

"It is settled law that a Government employee is entitled only to the rights and salary of the position to which he has been *appointed* by one having the proper authority to do so. *Peters v. United States*, 534 F.2d 232, 234, 208 Ct.Cl. 373, 377 (1975); *Desmond v. United States*, 201 Ct.Cl. 507, 525–26 (1973); *Coleman v. United States*, 100 Ct.Cl. 41, 43 (1943); *Jackson v. United States*, 42 Ct.Cl. 39, 41–42 (1906)." 552 F.2d at 924, 212 Ct.Cl. at 98.

*Accord, Bielec v. United States*, 456 F.2d 690, 197 Ct.Cl. 550, 560 (1972); *Dianish v. United States*, 183 Ct.Cl. 702, 707 (1968).

■ Therefore, summarizing the decisions of the Supreme Court and this court, it is clear that an individual cannot hold a government position as an officer or employee, nor receive the salary or other benefits pertaining thereto, until he or she has been appointed to that position by a person authorized to make the appointment.

■ Applying these rules to the case now before us, we find that Baker never received a federal appointment during his service with the NYSES. He readily admits this fact[5] even though the Wagner-Peyser

---

5. Baker, in his reply to the Government's cross-motion for partial summary judgment, admits

that he never received a federal appointment by stating:

Act, *supra*, under which he is claiming to have had the status of a federal employee, expressly authorized the appointment of employees by the Secretary of Labor.[6]

In addition to Baker's admission that he never received a federal appointment for his service with the NYSES, the record affirmatively shows that he was appointed to that job by Ms. Clare Lewis, Director of Junior Placement for New York. She was a state employee and had no authority to appoint Baker to a federal position.

In *Walton v. United States*, 213 Ct.Cl. 755, 756 (1977) the plaintiff was deputized by a United States marshal to perform certain functions. He later sued the Government for overtime pay claiming he was a federal employee. We denied his claim on the ground that he was never appointed to a federal position by any officer empowered to make such an appointment. We held in that case:

> "The undisputed affidavits make it clear that plaintiff was never appointed to a civil service position with the U.S. Marshal's Service and was never carried as an employee of that agency or its component parts. Nor was he appointed or purported to be appointed to any other position in the federal service. His only connection was that from November 1973 to May 1974 he was specially deputized by the United States Marshal for the Southern District of Florida. That post was not a classified position in the U.S. Marshal's Service, and the regulations authorize selected state and local law enforce-

ment officers to be specially deputized to perform functions of a deputy U.S. Marshal.

> "In these circumstances it is plain that count I fails to state a proper claim because plaintiff was not an 'employee' covered by the overtime provisions of Title 5 of the U.S.Code (*see* 5 U.S.C. §§ 2105, 5541(2)). *He was not appointed in the civil service, or to a civil service position, by any officer empowered to make such appointment. See, e. g., Goutos v. United States*, 552 F.2d 922, 212 Ct.Cl. 95 (1976). He was therefore beyond the coverage of the overtime legislation Congress has provided in Title 5 which is confined, insofar as the executive branch is concerned, to those designated classes of federal employees." 213 Ct.Cl. at 756. (Emphasis supplied).

Since Baker never received a federal appointment, he fails to meet all the requirements for a federal employee as provided by 5 U.S.C.A. § 2105 and by the case law. *See Stapleton v. Macy*, 113 U.S.App.D.C. 78, 304 F.2d 954 (D.C.Cir.1962). Accordingly, his claim for retirement credit for his service with the NYSES from June 6, 1933, to April 14, 1941, cannot be granted.

■ As reflected in his petition, Baker claims retirement credit for *all* of his service with the NYSES beginning September 1, 1931, and ending April 14, 1941. In his motion for partial summary judgment, however, he did not include his claim for his NYSES service prior to June 6, 1933, although that claim is still included in ¶ 7 of

---

"Plaintiff has argued before the Commission and in this Court that, *even though he had not received a formal federal appointment during his service on the cooperative employment security program in New York State*, that service nonetheless satisfied the "federal appointment" requirement for creditable service as that requirement has been interpreted and applied by the Civil Service Commission in the context of federal-state cooperative employment, particularly, in the 1957 Minute of the Civil Service Commission." (Emphasis supplied).

**6.** Section 2 of the Wagner-Peyser Act provided: "Sec. 2. The Secretary of Labor is authorized, without regard to the civil service laws, to

appoint and, without regard to the Classification Act of 1923, as amended, to fix the compensation of one or more assistant directors and such other officers, employees, and assistants, and to make such expenditures (including expenditures for personal services and rent at the seat of government and elsewhere and for law books, books of reference, and periodicals) as may be necessary to carry out the provisions of this Act. In case of appointments for service in the veterans' employment service provided for in section 3 of this Act, the Secretary shall appoint only veterans of wars of the United States." Act of June 6, 1933, ch. 49, § 2, 48 Stat. 113.

his petition and is referred to in footnote 1 of his motion. He gives no reason for this exclusion in his motion of his earlier NYSES service. The Government, on the other hand, has filed a cross-motion for partial summary judgment asserting, among other things, that Baker's entire claim is barred by limitations, and contending that none of his service with the NYSES met the requirement for federal employment, and asking that his petition be dismissed. According to Rule 101(f) of the court, the party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Otherwise, a summary judgment may be entered against him. *Burton v. United States*, 404 F.2d 365, 186 Ct.Cl. 172 (1968), *cert. denied*, 394 U.S. 1002, 89 S.Ct. 1599, 22 L.Ed.2d 780 (1969). Baker has not alleged any facts establishing an issue for trial concerning his NYSES service before June 6, 1933. Therefore, in view of our disposition of Baker's NYSES service after June 6, 1933, his claim for retirement credit based on his service with the NYSES before June 6, 1933, must also be rejected, because the claim does not allege a triable issue of fact as required by Rule 101(f) of the court.

## II. The Claims of John R. Langenbach and William H. Brown

John R. Langenbach is a plaintiff in this case, but he is not seeking summary judgment on his alleged claim. Consequently, his case is not before us and, therefore, we take no action with reference to it.

While William H. Brown has not appeared in this case in person nor by pleadings filed by him, plaintiffs Baker and Langenbach state in their petition that:

"Plaintiffs also bring this action to obtain review of the decisions of the Civil Service Commission denying the applications of plaintiff Baker and William H. Brown for retirement credit under the Retirement Act for their federal-state cooperative service."

The plaintiffs allege further in behalf of Brown:

"On September 7, 1976, William H. Brown, *an employee of the Department of the Interior* who had previously been employed by the Texas Game and Fish Department, filed an application with the Bureau of Retirement, Insurance and Occupational Health, United States Civil Service Commission, seeking credit for his service in the 1950s and 1960s on the federal-state cooperative fish restoration program that is funded and operated by the federal and state governments pursuant to the Dingell-Johnson Act (Act of August 9, 1950, 64 Stat. 430), 16 U.S.C. 777 *et seq*. The cooperative fish restoration program is modeled upon the cooperative wildlife restoration program which was established by the Pittman-Robinson Act. During Mr. Brown's service on the cooperative fish restoration program, it was administered on both the federal and state level in the same manner as the cooperative wildlife restoration program.

The Bureau of Retirement, Insurance and Occupational Health summarily rejected the applications of plaintiff Baker and Mr. Brown on January 18, 1977." (Emphasis supplied).

The petition also alleges that Brown appealed to the Appeals Review Board of the CSC on January 28, 1977, which appeal was denied by that Board on December 2, 1977. He then requested the Civil Service Commissioners to review the decision of the Appeals Review Board. This request was denied by the Commissioners on February 8, 1978.

Mr. Brown is not a party to plaintiff Baker's motion for summary judgment and has not filed such a motion himself or by any attorney or other representative. Consequently, his claim is not before us. However, it should be pointed out that he is still an employee of the Department of Interior and has never retired. This is shown by plaintiff's petition and also by the decision of the CSC Appeals and Review Board. The Board found in this regard:

"The record shows that from July 1, 1953 through August 31, 1954, and again from July 1, 1955 through March 9, 1962, the appellant served on cooperative fish

restoration projects in the State of Texas. These projects were financed and administered in part by the Federal government under the Act of August 9, 1950 (64 Stat. 430) (hereinafter the Dingell-Johnson Act), 16 U.S.C. 777, *et seq. On March 10, 1962, the appellant became an employee of the Department of the Interior and a member of the Civil Service Retirement System. He retains such status today, serving as a Fishery Research Specialist in the United States Fish and Wildlife Service regional office in New Mexico. The appellant now claims retirement credit for his previous periods of service on cooperative fish restoration projects under the Dingell-Johnson Act.*" (Emphasis supplied).

Since Brown is still a federal employee in the Department of Interior and has never retired, his cause of action, if any, for annuity retirement credit for prior service on cooperative fish restoration projects in Texas has not accrued. All of the events required to fix the liability of the United States for annuity retirement credit for such service have not occurred. A claim against the United States accrues on the date when all the events have occurred which fix the liability of the United States and entitle the claimant to institute an action thereon. *United States v. Anderson,* 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926); *Sauer v. United States,* 354 F.2d 302, 173 Ct.Cl. 642, 647 (1965); *Fattore v. United States,* 312 F.2d 797, 160 Ct.Cl. 666 (1963); *Ball v. United States,* 137 F.Supp. 740, 133 Ct.Cl. 841 (1956), *cert. denied,* 352 U.S. 827, 77 S.Ct. 41, 1 L.Ed.2d 50 (1956); *Putoma Corp. v. Commissioner,* 601 F.2d 734 (5 Cir. 1979).[7]

We held in *Sauer v. United States, supra,* that plaintiff's claim for accumulated leave

did not accrue until his separation from government employment. Therefore, Brown can have no claim for annuity retirement credits until he has retired from government service.

Brown's claim has not been properly pleaded according to the rules of our court. Rule 34(a) provides that:

"In the petition, the title of the action shall include the names of all the parties . . . ." An examination of the petition shows that Brown's name does not appear in the title of the action as a party. This is a clear violation of the Rule.

Our Rule 102(b) states that the court upon its own motion may dismiss any action at any time for failure of the plaintiff to comply with the rules of the court.

For all of the foregoing reasons, we conclude that the claim of William H. Brown is not properly before this court and should be dismissed. Therefore, the court on its own motion hereby dismisses plaintiffs' petition insofar as it alleges a claim of William H. Brown. We find it unnecessary to reach other issues raised by the parties.

## III. CONCLUSION

Accordingly, Baker's motion for partial summary judgment is denied; defendant's motion for summary judgment is granted, and the plaintiffs' petition is dismissed as to Baker's claim. The Langenbach claim is remanded to the trial division for further appropriate proceedings.

---

7. The "all-events" test has been applied by various courts since the decision in *Anderson* was handed down. *See United States v. Consolidated Edison Co.,* 366 U.S 380, 385, n. 5, 81 S.Ct. 1326, 6 L.Ed.2d 356 (1961); *Dixie Pine Products Co. v. Commissioner,* 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 (1944); *Brown v. Helvering,* 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934); *Union Pacific R. R. Co. v. United States,* 524 F.2d 1343, 208 Ct.Cl. 1 (1975), *cert. denied,* 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 89 (1976); *Koehring Co. v. United States,* 421 F.2d 715, 190 Ct.Cl. 898, 905 (1970); *Clevite Corp. v. United States,* 386 F.2d 841, 181 Ct.Cl. 652, 658 (1967); *Trinity Construction Co. v. United States,* 424 F.2d 302 (5 Cir. 1970); *Guardian Investment Corp. v. Phinney,* 253 F.2d 326 (5 Cir. 1958); *Turtle Wax, Inc. v. Commissioner,* 43 T.C. 460, 466–67 (1965); and *Denver & Rio Grande Western Railroad Co. v. Commissioner,* 38 T.C. 557, 572 (1962).