**James E. CURRAN, et al., Plaintiffs,**

v.

**OFFICE OF PERSONNEL MANAGEMENT BUREAU OF RETIREMENT, INSURANCE, AND OCCUPATIONAL HEALTH, Defendant.**

Civ. A. No. 82–2464.

United States District Court, District of Columbia.

July 25, 1983.

---

**4.** *See, e.g.,* CPLR 5234(b), (c).

Norman L. Blumenfeld, Washington, D.C., for plaintiffs.

William J. Birney, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

The 13 individual plaintiffs were indisputably employees of someone when they worked for varying periods between 1949 and 1964 under a contract for scholarly services between the Georgetown University and the Department of the Army, and they have brought suit here to set aside the decision of the Appeals Review Board ("ARB" or "Board") of the Civil Service Commission upholding the determination of the Bureau of Retirement, Insurance and Occupational Health ("BRIOH") that they were not *federal* employees within the meaning of 5 U.S.C., § 2105, during their respective tenures and, thus, not entitled to have those periods included in computing their civil service retirement benefits.[1] The case is now before the Court on cross-motions for summary judgment. For the reasons hereinafter set forth plaintiffs' motion will be denied, the defendant's motion granted, and the complaint dismissed.

■ This Court may vacate the ARB's decision if it finds it to be arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law. *Jankovic v. United States,* 384 F.Supp. 1355, 1358 (D.D.C.1974); *McKenzie v. Calloway,* 456 F.Supp. 590, 593–95 (E.D.Mich.1978). But its judicial review is confined to the record compiled before the agency. The Court is not empowered to undertake a *de novo* develop-

---

1. In the parlance of federal employee benefits law, this is an "old systems" case, i.e., plaintiffs' claims arose prior to enactment of the Civil Service Reform Act of 1978. The case is, therefore, properly before a federal district court. *Kyle v. ICC,* 609 F.2d 540 (D.C.Cir. 1980); *Tenny v. United States,* 441 F.Supp. 224 (E.D.Mo.1977). *See Ellis v. MSPB,* 613 F.2d 49 (3d Cir.1980). The CSRA established the Merit Systems Protection Board ("MSPB") and con-

ferred jurisdiction to review that agency's decisions upon the various federal circuit courts of appeal and the Court of Claims. *Frazier v. MSPB,* 672 F.2d 150, 159 (D.C.Cir.1982). Thereafter the Federal Courts Improvement Act, Pub.L. 97–164, transferred appellate jurisdiction over the MSPB exclusively to the Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(b)(1) (1983).

ment of the facts, nor may it substitute its judgment for that of the ARB. *See Cooperative Services v. HUD,* 562 F.2d 1292, 1295 (D.C.Cir.1976); *Beverly Enterprises v. Califano,* 446 F.Supp. 599, 604 (D.D.C.1978).

The administrative record establishes that Georgetown University entered into a contract (the "Contract"), pursuant to 10 U.S.C., § 2304(a)(5), with the Department of the Army to perform certain unspecified studies for it.[2] Section 10 of the Contract expressly provided that all persons employed thereunder were to be employees of the "contractor" and not the U.S. government, but it nonetheless gave the Army's contracting officer ("CO") veto power over the university's hiring decisions and the right to remove personnel already hired for cause. (The CO also supervised all work done on the projects covered by the Contract). Moreover, plaintiffs enjoyed a number of the customary perquisites of official civilian service with the military, such as use of officers' clubs, post exchanges and government parking, and they were issued Army civilian identification cards. On the other hand, plaintiffs were paid directly by the University (and without deductions for civil service retirement contributions).

■ At common law there were no formal requisites to the creation of the master-servant relationship, *see* 53 Am.Jur.2d, *Master & Servant* at §§ 14–15 (1970), the primary indicium of which was simply the exercise of control by the putative employer. *Joint Council of Teamsters No. 42 v. N.L.R.B.,* 450 F.2d 1322, 1326 (D.C.Cir.1971). *See* Restatement (Second) of Agency § 220; *Prosser,* Law of Torts at ch. 13, ¶ 70 (4th ed. 1971). But a host of consequences attends the federal employment relationship beyond the common law's primary concern with the master's vicarious liability for his servant's tortious conduct. The status of civil servant is *sui generis, Shepherd v. Merit Systems Protection Board,* 652 F.2d 1040, 1041 n. 6 (D.C.Cir.1981), and it is clear that *bona fide* federal employment does not commence unless and until each of the requirements of law is met. *National Treasury Employees Union v. Reagan,* 663 F.2d 239, 246 (D.C.Cir.1981); *Baker v. United States,* 614 F.2d 263, 266 (Ct.Cl.1980).

The relevant statute, 5 U.S.C., § 2105, defines a federal employee as an individual who is: (1) appointed to the civil service by a designated federal officer acting in his official capacity as such; (2) engaged in the performance of a federal function under authority of an Act of Congress or Executive Order; and (3) subject to the supervision of a federal officer during the performance of his duties.[3] The ARB assumed (although OPM has never conceded) that the two latter requirements—federal function and federal supervision—were met in this case. It found, however, that plaintiffs were never *appointed* to a position in the civil service. Holding that a federal appointment must be evidenced by some formal appointive instrument in plaintiffs' personnel records, and finding none, the Board ruled that plaintiffs must have been, as the Contract said they were, employees of Georgetown University.[4]

■ Plaintiffs contend that evidence of federal appointment is not limited to any particular documentation (which they concededly cannot produce) but should be

---

**2.** The administrative record concerns only plaintiffs Curran, Fake, and Shapbell who actually made claims, but defendant Office of Personnel Management ("OPM") concedes the futility (upon the premise that the other plaintiffs were employed under the same circumstances) of insisting upon formal claims for benefits from them solely to exhaust administrative remedies. *See Natural Resources Defense Council v. Train,* 510 F.2d 692, 703 (D.C.Cir. 1975).

**3.** The legislative history of this section is silent as to the particulars of these requirements oth-

er than that it represented a codification of existing Civil Service Commission practice. *See* H.R. No. 10104, 89th Cong., 2d Sess. at 27 (1965).

**4.** The Board rejected plaintiffs' suggestion that Section 10 was inserted merely to relieve the Army of potential tort or tax liability, stating that "[n]o evidence of substance has been submitted to support this contention, apart from [counsel's] brief and the self-serving affidavit of former employees under the contract."

found from the intent of the parties as manifested by the totality of facts and circumstances surrounding the inception and continuation of the relationship. The totality-of-circumstances test advocated by plaintiffs, however, would render the lack of evidence of appointment a mere technicality, to be remedied by other indicia of intent to employ. Yet since *Marbury v. Madison,* 5 U.S. (1 Cranch) 137 (1803), it has been clear that there can be no employment of a federal officer until the "last act" necessary to perfect the appointment has been made. *See also United States v. Testan,* 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976). Whether the "last act" is ministerial or not, the appointment requirement cannot simply be read out of the statute.

◾ The only case plaintiffs cite which offers substantial support for the totality-of-circumstances test is that of the MSPB in *Acosta v. OPM,* Docket No. DC 08318010060 (Nov. 26, 1982). While federal courts should ordinarily pay heed to the interpretation of a statute by an agency charged with its enforcement, *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Miller v. Bond,* 641 F.2d 997, 1002 (D.C.Cir.1981), the principle obtains only when the statute is consistently so applied by the agency. *Bamberger v. Clark,* 390 F.2d 485 (D.C.Cir.1968). *See Shewmaker v. Parker,* 479 F.Supp. 616, 618 (D.D.C.1979). The *Acosta* decision is an apparent aberration from prior agency and court interpretations of 5 U.S.C., § 2105, and while it might be distinguished from the instant case on several factual bases, the decision is nonetheless fundamentally at odds with the current state of the law in this area which finds most recent expression in *Costner v. United States,* 665 F.2d 1016 (Ct.Cl.1981).

In *Costner* an electronics technician on a private payroll, who had provided technical services to the Air Force pursuant to its contract with his corporate employer, claimed to be a federal employee for much the same purposes as plaintiffs here, and also satisfied the two latter requirements of 5 U.S.C., § 2105. The Court of Claims held, however, that the statute required formal appointment to the civil service as well. Noting that "this view of the law eliminates a 'totality of the circumstances' approach," the court said, "an abundance of federal function and supervision will not make up for the lack of an appointment." 665 F.2d at 1020. It rejected plaintiff's contention that his interview with a federal officer sufficed as an appointment, reaffirming its prior determination that execution of a standard personnel form was "the *sine qua non*" of a federal appointment. *Id.* at 1022, *quoting, Goutos v. United States,* 552 F.2d 922, 924 (Ct.Cl.1976).[5]

◾ As a number of courts have noted, elimination of the formal appointment requirement would create the potential for "chaos in government personnel management," *Goutos v. United States, supra* by introducing uncertainty into the federal employment process to the confusion of employer and employee alike, not to mention the public which is generally entitled to know when it is treating with a government employee and when it is not. For similar reasons this Court concludes that plaintiffs here were not federal employees within the meaning of 5 U.S.C., § 2105, while employed under the Contract. Federal employment must ultimately depend on the execution of some "last-act" ceremony of "appointment," even so humble a rite as the completion of a standard personnel form, which will thereafter evince an unequivocal intent on the part of the government to admit an individual to its service. *See National Treasury Employees Union v. Reagan,* 663 F.2d 239, 246 (D.C.Cir.1981).[6]

---

**5.** *Accord Baker v. United States,* 614 F.2d 263, 266 (Ct.Cl.1980); *Vukonich v. Civil Service Commission,* 589 F.2d 494 (10th Cir.1978); *Walton v. United States,* 213 Ct.Cl. 755 (1977); *Goutos v. United States,* 552 F.2d 922 (Ct.Cl.

1976); *Skalafuris v. United States,* 683 F.2d 383 (Ct.Cl.1982).

**6.** The Court assumes without deciding that oral evidence of an intent to appoint might be relevant in instances in which, for example, fraud

The Court finds that the decision of the ARB is neither arbitrary, capricious, an abuse of discretion, nor otherwise not in accordance with law, and is supported by substantial evidence, and it is, therefore, this 25th day of July, 1983,

ORDERED, that plaintiffs' motion for summary judgment is denied; and it is

FURTHER ORDERED, that defendant's motion for summary judgment is granted and the complaint dismissed with prejudice.

---

is alleged on the part of an appointing officer or a record of appointment is allegedly lost. *See Goutos v. United States,* 552 F.2d 922, 924 n. 3 (Ct.Cl.1976). The plaintiffs in this case, however, never suggested such a possibility before the agency and have, therefore, no right to do so now. *See Environmental Defense Fund v. Costle,* 657 F.2d 275, 286 (D.C.Cir.1981).

