**William A. SAVERING, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 311–85C.**

United States Claims Court.

Nov. 20, 1989.

Suzanne K. Henley, Annapolis, Md., for plaintiff.

Hillary Stern and Evelyn M. Korschgen, Washington, D.C., with whom were Asst. Atty. Gen. John R. Bolton, David M. Cohen, Director, and Robert A. Reutershan, Asst. Director.

## OPINION

SMITH, Chief Judge.

This case concerns a claim brought by a civilian assistant professor at the United States Naval Academy (USNA) for overtime compensation pursuant to the overtime provisions of the Federal Employee's Pay Act, 5 U.S.C. § 5542 (1988), for duty instructor watches on site at the USNA and while on stand-by duty. In light of the testimonial and documentary evidence presented, and for the reasons stated below, this court finds that the plaintiff is entitled to receive compensation for duty watch hours assigned and performed on site and for stand by hours actually worked from May 26, 1979 through October 17, 1987.

## FACTS

William A. Savering has been a federal employee since he joined the United States Naval Academy as an Associate Professor of Physical Education in 1968. From his initial hiring through August 1982 Professor Savering also served as head gymnastics coach, for which he was partially compensated by the Naval Academy Athletic Association (NAAA), a private organization. In 1982, Professor Savering resigned from his formal coaching duties, but continued as a professor and assumed the additional duties of the Chairman of the USNA's Gymnastics Committee. In 1986, Professor Savering ceased serving as committee chairman and became the Director of Intramural Activities, a position in which he continues today.

In addition to the duties outlined above, Professor Savering was required to serve as duty watch officer at assigned times from 1969 through 1985, at which time the USNA regulations no longer required him to serve watch duty.[1] As duty watch officer, Professor Savering and his colleagues were required to perform specific tasks in the nature of security guard for the buildings comprising the physical activities complex. Over the years in question, the number of buildings and their hours of operation varied, but the essential requirements of the 24-hour duty assignments remained constant. Included in the work expected of a watch duty officer was ensuring the facilities for which he was responsible were secure, functioning properly, and being used by authorized personnel only; serving as the emergency contact after normal working hours; making periodic security inspections; and securing buildings after events. In addition, the duty watch officer was required to inform the USNA security personnel of his whereabouts after securing the premises and assuming phone watch, and to remain available to return to the USNA if his services were required.

It is for those hours spent on watch duty assignments, both on-site at the USNA and while on stand-by, that Professor Savering is claiming overtime compensation in this action.

## DISCUSSION

The defendant's position throughout this litigation may be summarized as follows: plaintiff is not entitled to overtime because he did not work in excess of 40 hours/week; if he did, he has not proven the number of hours worked; and, if he

---

1. Duty watch requirements and watch officers' general and specific duties were detailed in USNA Physical Education Instruction 1601.2A, dated November 1, 1978 (PHYSEDINST 1601.2A), Physical Education Instruction 1601.2B, dated October 10, 1986 (PHYSEDINST 1601.2B), and in several intra-departmental memoranda issued concerning the maintenance of watch duty.

PHYSEDINST 1601.2A and PHYSEDINST 1601.2B required officers/instructors in the department with fewer than 25 years of service at the USNA to serve watch duty; in 1985 the instructions shortened the period of service to 15 years, thereby terminating Professor Savering's watch duty requirement.

did, he has improperly calculated the overtime rate.

### I. Whether Plaintiff Worked in Excess of 40 Hours/Week

#### A. Whether Coaching was Federal Employment

The defendant has contended throughout the course of this litigation that because Professor Savering held a contract with the NAAA for his coaching duties that coaching was not federal employment and therefore his time spent engaged in coaching and related activities should not be included in determining whether Professor Savering worked enough hours to entitle him to overtime.[2] In support of its position, the defendant relies on the statutory definition of "federal employee" found at 5 U.S.C. § 2105 (1988), and cases construing it. Although the defendant concedes that Professor Savering was a government employee with respect to his teaching contract with the USNA, it argues that the statutory test must be meet with respect to the coaching for it to be included.

Section 2105 reads, in pertinent part:

(a) For the purpose of this title, "employee," ... means an officer or individual who is—

(1) appointed to the civil service by ...

(2) engaged in the performance of a Federal function under the authority of law or an Executive act; and

(3) subject to the supervision of an individual named in paragraph (1)....

The cases cited by the defendant do stand for the proposition that the statutory requirements of § 2105 must be met to establish whether one is a federal employee. In particular, the cases all address the

issue of whether the plaintiffs had been appointed to their respective positions in accordance with the mandate of § 2105(a)(1). *Horner v. Acosta,* 803 F.2d 687 (Fed.Cir.1986); *Baker v. United States,* 614 F.2d 263, 266, 222 Ct.Cl. 263 (1980); *National Treasury Employees Union v. Reagan,* 663 F.2d 239, 246 (D.C.Cir. 1981). The question in those cases was whether an individual was a federal employee; this is different and distinct from the question of whether particular tasks constitute federal employment. In the case at bar, the defendant *concedes* that Savering is a federal employee. There is nothing in the case law cited by the defendant, nor any other authority of which this court is aware, to suggest that the *employment* must meet the requirements of § 2105, as well as the employee. There is nothing in the language of the cases or the statute to suggest this to be a valid construction.

The evidence establishes that Professor Savering's work as professor and coach are not severable. Professors who were hired for the physical education department were expected to serve in some coaching capacity, the instructors were contractually involved with the NAAA, and the value of the contracts with the NAAA was far below what common sense would dictate for a separate, distinct coaching contract. This is borne out by the fact that Professor Savering's annual compensation from NAAA was $750 in 1968 and remained the same through the time he resigned from his coaching duties in 1982. Moreover, the government does not dispute that the physical education professors' USNA non-coaching duties, including the watch duty assignments, were adjusted according to their coaching activities, indicat-

---

**2.** Given this contention, the court is at a loss to explain how the defendant argued at trial and in its post-trial brief that it was unfairly surprised by plaintiff's inclusion of coaching hours in his computation of his work week. Furthermore, even if this came as a surprise to the defendant it was not prejudicial. The nature of the evidence the defendant states it would have introduced had it been forewarned, *e.g.,* the character of NAAA's corporate operations and formation, would not have altered this court's judgment that Professor Savering's coaching duties were part of his federal employment.

Parenthetically, the court notes that although the NAAA may be characterized as a private entity, the government has taken an ambivalent view of its relationship with the NAAA, as evidenced by legal action taken by the United States on behalf of the NAAA and its Army counterpart. *See United States v. Reliance Ins. Co.,* 799 F.2d 1382 (9th Cir.1986) (suit against surety arising from the Army–Navy football game).

ing that the USNA itself considered the positions integrated.

The court cannot accept the defendant's position that the form of the employment agreements among the USNA, NAAA, and Professor Savering should prevail over their substance. Accordingly, this court holds that Professor Savering's employment as a coach was federal employment for purposes of determining the number of hours spent working on the government's behalf.

### B. Whether Responsibilities Exclusive of Watch Duty Resulted in at Least 40 Hours/Week

Both sides to this dispute agree that as a professional, Professor Savering's job as instructor/coach required him to work as many hours as necessary; whether this required him to work 8 hours each and every day or 40 hours each week, however, was contested throughout these proceedings. Defendant's witnesses, for example, disputed plaintiff's testimony as to the amount of time spent on class preparation, teaching make-up classes, and administrative matters. Adding to the confusion was the fact that over Professor Savering's lengthy tenure with the USNA he has served as head coach, instructor, committee chairman, and intramural director, with his duties and work hours fluctuating accordingly. At various times, Professor Savering's job requirements and time spent in their performance also depended on the playing and recruiting seasons.

The defendant has argued that even if Professor Savering's coaching hours may be included, his work hours fell below 40 hours/week when he ceased coaching in 1982. Plaintiff contended that this was not

the case, and that he assumed additional teaching responsibilities at that time, as well as the role of committee chairman, all of which, according to the defendant, still fail to bring Professor Savering's work week up to the requisite number of hours. The same type of argument has been advanced for that period after 1986, when Professor Savering stopped teaching and became a full-time administrator as the Director of Intramural Activities.

Of course, many of a professor's responsibilities are not readily quantifiable. Even if the defendant's figures were accepted as representing the amount of time spent on certain specific tasks, Professor Savering has proven to the court's satisfaction that throughout his employment by the USNA he worked many more hours on non-quantifiable tasks, such as preparing for and attending road games, counseling midshipmen, and evaluating and revising the gymnastics curriculum.[3] It is the finding of this court that whether Professor Savering was engaged in coaching, recruiting, teaching, coordinating the efforts of his colleagues, or supervising the intramural activities, his time spent on behalf of the USNA, exclusive of watch duty assignments, was in excess of 40 hours/week.[4]

### II. Whether Plaintiff is Entitled to Overtime

#### A. For Stand By Duty[5]

The law is well-settled that an employee is entitled to overtime pay for stand by hours spent "predominantly for the employer's benefit," *Armour & Co.*, 323 U.S. at 133, 65 S.Ct. at 168, a question that is "dependent on all the circumstances...."

---

**3.** These examples are only illustrative. The professional nature of Professor Savering's positions understandably makes some of his job aspects not only non-quantifiable, but not as readily identifiable as if he were working on an assembly line.

**4.** Plaintiff's claim is only for those hours in excess of 40 hours/week spent on watch duty assignments; plaintiff concedes that any other "overtime" hours spent on behalf of the USNA were in his professional capacity, which required him to work as many hours as necessary.

**5.** The term "stand by duty" as used by the parties in this case actually is a misnomer; presumably, it is used to distinguish between on-site and off-site overtime, although historically it has been used to distinguish "active labor" from "inactive." *See, e.g., Armour & Co. v. Wantock,* 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944). To maintain consistency in this proceeding the court has used the same terms employed by the parties.

*Id.*[6] Although this requires a case-by-case determination, a review of the cases confronting this issue indicates that claims based on facts similar to those in the present case have been denied. *See, e.g., Moss v. United States,* 353 F.2d 746, 173 Ct.Cl. 1169 (1965) (denying claim where only restriction was that plaintiff be accessible by telephone); *Rapp v. United States,* 340 F.2d 635, 167 Ct.Cl. 852 (1964) (same); *Sheets v. United States,* 2 Cl.Ct. 101 (1983) (denying claim where plaintiff was required to remain within 20–mile beeper range); *Allen v. United States,* 1 Cl.Ct. 649, *aff'd,* 723 F.2d 69 (Fed.Cir.1983) (claim denied where plaintiff was required to remain within beeper range).

■ In this case, Professor Savering was free to pursue his own interests at home, or if he chose to go elsewhere his only requirements were that he leave a number where he could be reached and that he be able to promptly return to the USNA if needed. Although Professor Savering may have felt compelled to remain at home, the freedom of movement he rightfully enjoyed establishes that the time he spent on stand by duty away from USNA premises is not compensable in general.

The parties agree, however, that if Professor Savering was required to return to the USNA premises while on stand by duty he would be entitled to overtime pay. Thus, the question remains whether Professor Savering in fact was required to do so during any of his stand by hours.

### B. For On Site Duty

The defendant concedes that if Professor Savering proves he worked in excess of 40 hours/week he would be entitled to overtime compensation for work performed on USNA premises. In light of this court's determination that Professor Savering has met that requirement, *supra,* no further review of the law governing on-site overtime is warranted.

**6.** Although different standards for determining whether a claim meets this criterion have developed for stand by hours spent at the job site and those spent at the employee's home or other

### III. Whether Plaintiff Has Proven the Amount of Overtime

#### A. Burden of Proof

Having established that Professor Savering worked 40 hours exclusive of watch duty assignments, the court must determine the number of overtime hours for which Professor Savering is to be compensated and the rate at which he will be paid. Defendant contends, however, that the plaintiff has failed to prove the number of overtime hours worked by a preponderance of the evidence, denying plaintiff's claim that the burden of proof has shifted to the defendant. For the reasons discussed below, this court agrees with plaintiff that once the fact that an employee has proven that he is entitled to compensation, the burden shifts to the employer. Unless the employer is able to prove the number of compensable hours by a preponderance of the evidence, the court may establish the amount "as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery,* 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946).

There is surprisingly little case law concerning the proof required under the Federal Employee's Pay Act. Guiding precedent, however, has been established under other employment statutes, most notably, the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1982 & Supp.1987). The United States Supreme Court ruled in 1946 that:

[a]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the evidence to be drawn from the employee's evidence.

place of employee's choosing, it only is necessary to consider the latter for purposes of the present case.

*Anderson,* 328 U.S. at 687, 66 S.Ct. at 1192.

Although *Anderson* was brought under the FLSA, the standard has been extended by several circuit courts to claims arising under the Employees' Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (1982) (ERISA) and the Service Contract Act, 41 U.S.C. §§ 351–357 (1982 & Supp.1987), adopting the *Anderson* Court's reasoning that employers are or should be in a better position than employees to prove such facts. *See, e.g., Brick Masons Pension Trust v. Industrial Fence & Supply,* 839 F.2d 1333 (9th Cir.1988) (ERISA); *Amcor v. Brock,* 780 F.2d 897 (11th Cir.1986) (Service Contract Act); *American Waste Removal v. Donovan,* 748 F.2d 1406 (10th Cir.1984) (Service Contract Act).

 It is the opinion of this court that the holding of *Anderson* and its progeny should be extended to claims under the Federal Employees Pay Act.[7] There is no reason to believe that government employees are better situated than those in the private sector to keep track of their work hours. Therefore, the burden of proving the number of overtime hours worked by Professor Savering rests with the USNA. If the defendant cannot prove the number of hours worked, it bears the burden of negating the reasonableness of the inference drawn by the court from the evidence.

### B. Evidence as to Stand By Claim

Having determined plaintiff's burden of proof, and having briefly reviewed the appropriate legal standard for compensable overtime the court must establish whether plaintiff has provided sufficient proof to give rise to a just and reasonable inference of compensable hours for stand by duty.

It has been established that to prevail on his claim to overtime for stand by duty Professor Savering would need to show either that he was restricted to the USNA premises, that his activities were substantially limited, or that he responded to a security violation. Although plaintiff's burden is light, there must be a sufficient basis to form an inference.

In this case, while off the USNA premises, Professor Savering was free to eat, watch television, read, sleep, and otherwise be engaged in activities that were not for the primary benefit of his employer. Although he testified that he believed he was required to remain at home while on phone watch, he could have left his house provided he was able to be reached by telephone and could return quickly to the USNA if required. In short, Professor Savering's stand-by duty watch was not required to be performed on USNA premises, nor did it substantially interfere with his ability to use his time for his own purposes.

 With respect to telephone calls or beeper pages to which Professor Savering responded while on stand by duty, the only evidence presented took the form of a series of memoranda dated September 4, 1987 through March 31, 1988. The memoranda, written either by the head of the physical education department or the senior watch officers and addressed to either the duty officers or the executive officer of the physical education department, listed the violations reported between June 27, 1987 and February 28, 1988, and the actions taken by the respective duty officers. During that time period, the only violation to which Professor Savering responded was on October 17, 1987 at 12:45 a.m. According to a memorandum dated December 15, 1987, Savering "secured buildings in accordance with P.E. Duty Instruction. Violation occurred after building secured."

With the exception of this one occurrence, plaintiff has been unable to meet the burden of establishing that he responded to other violations sufficient to enable this court to draw a reasonable and just inference on which to base compensation.

---

7. In support of its argument that *Anderson* should not be extended to claims arising under the FEPA, the defendant cites *Baylor v. United States,* 198 Ct.Cl. 331, 335–37 (1972). In *Baylor,* however, the issue was whether the Portal-to-Portal Act of 1947, 29 U.S.C. §§ 216, 251–262, applied by implication to employees of the federal government. Since the instant case does not raise any issue of time spent in travel, neither *Baylor* nor that part of *Anderson* dealing with travel time is on point.

## C. Evidence as to On Site Claim

As an initial matter, the court would note that the evidence presented by both sides was problematic. For example, although the plaintiff introduced the assignment rosters which he claimed represented the dates and times for which he was assigned watch duty, and, presumably, for which he worked, there is ample evidence that instructors occasionally stood in for one another and switched assignments. The USNA directives that were introduced as evidence of the requirements that watch duty officers stay on the premises during the buildings' hours of operation are refuted by testimony that officers left for meals or to teach class, while other officers or Masters at Arms (assigned midshipmen) filled their places. Even the departmental memoranda that indicate the hours of operation for the physical education buildings and which are introduced to give rise to the inference that watch officers worked those hours on site are rebutted by testimonial and documentary evidence that those hours changed as required by special events and unscheduled activities, and were not recorded. Finally, the defendant introduced a log book covering January 24, 1983 through June 25, 1985. Although USNA regulations required the watch duty officers to record when they assumed and were relieved of the duty and to note any violations observed, there are many dates for which no entry was made at all. There was evidence that the book, which was intended to service three physical education buildings in operation, often was not able to be located, and that it sometimes was overlooked.

■ Notwithstanding some difficulty with a portion of the documentary evidence, the court is persuaded by the very credible testimony and demeanor of the plaintiff, his superiors, and colleagues, as presented by both sides to this dispute. Taken as a whole, the evidence supports a just and reasonable inference that the hours on the assignment sheets prepared by the USNA, or their equivalents, were, in fact, worked by plaintiff. The question remains as to the number of those hours that are compensable.

## VALUING THE RECOVERY

### I. Number of Hours

### A. Stand By

As shown previously, plaintiff provided minimal evidence to sustain an inference as to compensable stand by hours. Based on the one violation for which Professor Savering has proven he returned to the USNA, and based on testimony regarding the proximity of his home to the USNA and that the return would have required him to tour the facility and complete a checklist, this court finds a reasonable and just inference that Professor Savering is entitled to two (2) hours at the overtime rate in effect on October 17, 1987.

### B. On Site

The court has determined that the plaintiff has established a reasonable and just inference of overtime for hours claimed during which the buildings were open. There are two exceptions to this finding. First, the plaintiff is not entitled to overtime for any applicable lunch hour. Second, this court has determined that, as a general rule, Professor Savering most likely went home for dinner at 6:00 p.m. and either did not return to the site or returned for a nominal amount of time. Accordingly, the court has analyzed each date and time claimed by plaintiff, and finds plaintiff performed a total of 370.5 hours of on-site overtime.[8] While admittedly inexact, this method is supported by the evidence and reaches a "reasonable inference as to the extent of damages." *Anderson*, 328 U.S. at 688, 66 S.Ct. at 1193.

### II. Rate of Pay

There has been some dispute as to the appropriate rate of compensation to which Professor Savering is entitled. Plaintiff has claimed rates which represent one and one-half Professor Savering's respective hourly rate for the dates in question. In its post-trial brief, the defendant raised for the first time the issue of whether Professor Savering's recovery is limited by 5

---

**8.** *See* the Appendix to this opinion for a further breakdown of the court's analysis.

U.S.C. § 5542(a)(2) (1988) to one and one-half times the equivalent rate for a GS–10 step 1 employee, a rate that at all times was exceeded by Professor Savering's salary. Plaintiff has objected to the late point in the litigation of this case at which the defendant has introduced this issue; the court, nevertheless, is obliged to follow the statutory limit. Accordingly, the calculations found in the Appendix to this opinion are based on the GS–10 step 1 rate for the relevant time periods.

## CONCLUSION

It is often the case that a professional employee is required to work as many hours as is necessary to competently fulfill the requirements of his position. This may require far fewer or far more than a standard 40 hour work week. A government employer may not take advantage of this, however, by requiring additional jobs beyond the scope of the employee's professional responsibilities without appropriate compensation.

For the foregoing reasons, this court awards Professor Savering the amount of $5,853.98 for overtime pay.

IT IS SO ORDERED.

## APPENDIX
### WILLIAM A. SAVERING
### OVERTIME COMPENSATION

| Date | On Site Allowed | Rate * | Dollar Amount Allowed |
|---|---|---|---|
| 5/26/79 | 9.5 | $12.60 | $119.70 |
| 6/3/79 | 5.0 | | 63.00 |
| 6/8/79 | 6.0 | | 75.60 · |
| 8/15/79 | 3.5 | | 44.10 |
| 9/24/79 | 3.5 | | 44.10 |
| 10/18/79 | 3.5 | 13.48 | 47.18 |
| **Total 1979** | **31.0** | – | **$393.68** |
| 4/6/80 | 5.0 | 13.48 | $ 67.40 |
| 4/28/80 | 3.5 | | 47.18 |
| 5/27/80 | 3.5 | | 47.18 |
| 9/9/80 | 3.5 | | 47.18 |
| 9/27/80 | 9.5 | | 128.06 |
| 10/6/80 | 3.5 | 14.71 | 51.49 |
| **Total 1980** | **28.5** | – | **$388.49** |
| 4/7/81 | 3.5 | 14.71 | $ 51.49 |
| 4/25/81 | 9.5 | | 139.75 |
| 5/4/81 | 3.5 | | 51.49 |
| 5/17/81 | 5.0 | | 73.55 |
| 6/4/81 | 3.5 | | 51.49 |
| 6/17/81 | 3.5 | | 51.49 |
| 6/21/81 | 3.5 | | 51.49 |
| 8/9/81 | 5.0 | | 73.55 |
| 9/5/81 | 9.5 | | 139.75 |
| 10/4/81 | 5.0 | 15.2 | 77.10 |
| 10/26/81 | 3.5 | | 53.97 |
| **Total 1981** | **55.0** | – | **$815.12** |
| 4/20/82 | 3.5 | $15.42 | $ 53.97 |
| 4/22/82 | 3.5 | | 53.97 |
| 4/27/82 | 3.5 | | 53.97 |
| 5/3/82 | 3.5 | | 53.97 |
| 5/10/82 | 3.5 | | 53.97 |
| 6/2/82 | 3.5 | | 53.97 |
| 6/8/82 | 3.5 | | 53.97 |

| Date | On Site Allowed | Rate * | Dollar Amount Allowed |
|---|---|---|---|
| 6/14/82 | 3.5 | | 53.97 |
| 8/2/82 | 3.5 | | 53.97 |
| 8/31/82 | 3.5 | | 53.97 |
| 9/5/82 | 5.0 | | 77.10 |
| 9/22/82 | 3.5 | | 53.97 |
| 10/1/82 | 3.5 | | 53.97 |
| 10/14/82 | 3.5 | 16.03 | 56.11 |
| 10/23/82 | 9.5 | | 152.29 |
| 11/8/82 | 3.5 | | 56.11 |
| 11/14/82 | 5.0 | | 80.15 |
| 11/23/82 | 3.5 | | 56.11 |
| 12/2/82 | 3.5 | | 56.11 |
| **Total 1982** | **75.5** | -- | **$1,181.62** |
| 1/8/83 | 9.5 | $16.03 | $152.29 |
| 2/26/83 | 9.5 | | 152.29 |
| 3/3/83 | 3.5 | | 56.11 |
| 3/9/83 | 3.5 | | 56.11 |
| 4/23/83 | 9.5 | | 152.29 |
| 5/23/83 | 2.5 | | 40.08 |
| 6/6/83 | 4.5 | | 72.14 |
| 7/21/83 | 4.5 | | 72.14 |
| 8/11/83 | 4.5 | | 72.14 |
| 9/12/83 | 2.5 | | 40.08 |
| 11/14/83 | 2.5 | | 40.08 |
| 12/5/83 | 2.5 | | 40.08 |
| **Total 1983** | **59.0** | -- | **$945.71** |
| 1/6/84 | 6.5 | $16.03 | $104.20 |
| 2/12/84 | 5.0 | 16.67 | 83.35 |
| 3/8/84 | 2.5 | | 41.68 |
| 4/12/84 | 2.5 | | 41.68 |
| 5/6/84 | 2.5 | | 41.68 |
| 5/29/84 | 2.5 | | 41.68 |
| 8/30/84 | 4.5 | | 75.02 |
| 10/29/84 | 2.5 | | 41.68 |
| 11/28/84 | 2.5 | | 41.68 |
| **Total 1984** | **31.0** | | **$512.65** |
| 1/2/85 | 2.5 | 16.67 | $ 41.68 |
| 2/5/85 | 2.5 | 17.26 | 43.15 |
| 2/28/85 | 2.5 | | 43.15 |
| 3/7/85 | 2.5 | | 43.15 |
| 3/27/85 | 2.5 | | 43.15 |
| 4/28/85 | 5.0 | | 86.30 |
| 5/17/85 | 3.5 | | 60.41 |
| 5/31/85 | 3.5 | | 60.41 |
| 6/7/85 | 3.5 | | 60.41 |
| 9/26/85 | 2.5 | | 43.15 |
| 10/24/85 | 2.5 | | 43.15 |
| 11/15/85 | 2.5 | | 43.15 |
| **Total 1985** | **35.5** | -- | **$654.41** |
| 1/31/86 | 2.5 | $17.26 | $ 43.15 |
| 2/21/86 | 2.5 | | 43.15 |
| 3/9/86 | 5.0 | | 86.30 |
| 4/6/86 | 5.0 | | 86.30 |
| 5/16/86 | 6.5 | | 112.19 |
| 6/4/86 | 3.5 | | 60.41 |
| 10/3/86 | 2.5 | | 43.15 |
| 12/5/86 | 2.5 | | 43.15 |
| **Total 1986** | **30.0** | | **$517.80** |

| Date | On Site Allowed | Rate * | Dollar Amount Allowed |
|---|---|---|---|
| 1/25/87 | 5.0 | $17.78 | $ 88.90 |
| 2/13/87 | 2.5 | | 44.45 |
| 3/6/87 | 2.5 | | 44.45 |
| 3/30/87 | 2.5 | | 44.45 |
| 5/3/87 | 5.0 | | 88.90 |
| 5/14/87 | 2.5 | | 44.45 |
| 7/10/87 | 2.5 | | 44.45 |
| 10/16/87 | 2.5 | | 44.45 |
| **Total 1987** | **25.0** | | **$444.50** |

\* Rates are based on the GS–10, Step 1 salaries set forth in the following Executive Orders:

**Salaries Effective:**

October 1, 1978—Exec. Order No. 12,087, 43 Fed.Reg. 46,823 (1978).
October 1, 1979—Exec. Order No. 12,165, 44 Fed.Reg. 58,671 (1979).
October 1, 1980—Exec. Order No. 12,248, 45 Fed.Reg. 69,199 (1980).
October 1, 1981—Exec. Order No. 12,330, 46 Fed.Reg. 50,921 (1981).
October 1, 1982—Exec. Order No. 12,387, 46 Fed.Reg. 44,981 (1982).
January 1, 1984—Exec. Order No. 12,477, 49 Fed.Reg. 22,041 (1984).
January 1, 1985—Exec. Order No. 12,496, 50 Fed.Reg. 211 (1985).
January 1, 1987—Exec. Order No. 12,578, 52 Fed.Reg. 505 (1987).

| YEAR | HOURS | TOTAL |
|---|---|---|
| 1979 ....... | 31.0 | $ 393.68 |
| 1980 ....... | 28.5 | 388.49 |
| 1981 ....... | 55.0 | 815.12 |
| 1982 ....... | 75.5 | 1,181.62 |
| 1983 ....... | 59.0 | 945.71 |
| 1984 ....... | 31.0 | 512.65 |
| 1985 ....... | 35.5 | 654.41 |
| 1986 ....... | 30.0 | 517.80 |
| 1987 ....... | 25.0 | 444.50 |
| **TOTAL ....** | **370.5** | **$5,853.98** |